Gunter, J.
*140 Appellee — plaintiff—was employed by appellant under an implied contract as professor of mathematics in the Colorado Agricultural College for the year commencing July 1, 1896, at a salary of $1,500 per annum. The contract originated in an express one for the year beginning July 1, 1891, and was created by the services of appellee being continued after the expiration of the original definite term of employment, without objection by the employer, and without any new agreement. — 15 Am. and Eng. Ency. of Law (2d ed.), p. 1092. December 11, 1896, a committee of appellant on faculty and course of studies reported to it that the work in appellee’s department was unsatisfactory and would continue so while he was at its head. The report made no charges against his professional work but stated as the opinion of the committee that the best interests of the department and the college required his removal. It recommended that he tender his resignation to take effect December 31, 1896, and that his salary terminate at that date. Appellant adopted the report, notified appellee of its action, and requested his resignation. He refused to resign and tendered performance of his duties as professor of mathematics until June 30, 1897. The tender was declined by appellant and appellee discharged December 31, 1896. His salary was paid to last-mentioned date. He endeavored to obtain employment elsewhere but failed. He sued appellant July 3, 1897, to recover as damages his salary according to said contract from December 31, 1896, to July 1, 1897, and had judgment. Therefrom the case is here.
' If there was a contract of the nature stated, and appellant violated the same by the wrongful discharge of appellee and damages resulted, he should recover.
The defense was the invalidity of the contract *141 in this, that appellant could not make a contract employing appellee for a definite time, that is, that appellant could not by contract deprive itself of the power of terminating at pleasure its contract with appellee. A determination of this question is decisive of the case.
Appellant is a corporation created by statute, and it's powers are thereby defined.
“The State Board of Agriculture shall be a body corporate, capable in law of suing and being sued; of taking, holding and selling personal property and .real estate; of contracting and being contracted with; of having and using a corporate seal; and of causing to be done all things necessary to carry out the provisions of this act.” — 1 Mills’ Ann. Stats., p. 411, sec. 56.
“The State Board of Agriculture shall have the general control and supervision of the State Agricultural College, the farm pertaining thereto, and the lands which may be vested in the college by state or national legislation, and of all appropriations made by the state for the support of the same. The board shall have plenary power to adopt all such ordinances, by-laws and regulations, not in conflict with law,- as they may deem necessary to secure the successful operation of the college and promote the designed objects.” — 1 Mills’ Ann. Stats., p. 414, sec. 74.
“The board shall fix the salaries of the president, professors and other employees of the college and prescribe their respective duties. The board may remove the president or subordinate officers and supply all vacancies.” — 1 Mills’ Ann. Stats., p. 414, sec. 76.
Appellant, a corporation, is thus given the general control of the state agricultural college and of all property belonging thereto, and the power of tak *142 ing, holding and selling personal and real property, and of making contracts necessary to the successful operation of the college. As contracts employing professors to teach therein are of this nature, then the board is authorized by the terms of the statute to make such contracts. It is said, however, that the mere fact that the contract here under consideration is for a definite time — one year — is fatal to it; that under no circumstances can the board employ a professor to teach for a definite time.
The statute gives the board express power to employ professors. There is no provision thereof expressly limiting this power as to the time for which a professor may be employed; whatever limitation there may be on such power in such particular is an implied one. We know of no provision of law impliedly so limiting the power of the board, that is, prohibiting appellant from employing appellee for the term of one year. The power of the board to employ a professor for a definite time is impliedly limited to his employment for a reasonable length of time. It has not the power to employ him for an unreasonable time, but it does not appear to us that this employment for one year is for an unreasonable time. In the successful operation of the college it is necessary to make contracts of employment with various parties in the different departments connected with the college. In making such contracts the length of time for which they should run depends upon what is for the best interest of the college. We think the statute has left the determination of this question, the length of time for which the employment should be made, largely to the judgment of the board, and that such lodgment of the determination of the question is wisely made. The board is well able, as it understands the circumstances surrounding the employment, to determine whether it is for the best *143 interest of the institution to make the contract of employment determinable at the pleasure of the board, determinable on short notice, or whether the employment should be for a reasonably long definite time. It may be that such professors as are required cannot be secured under a contract determinable at the pleasure of the board. If so, the board should have, and we think has, the power to employ for a definite time, not unreasonably long. There are implied limitations on this power, as, that the contract must not run unreasonably long, but, as stated, the contract under consideration is not subject to this objection. Professors in the various departments of the college, however distinguished and learned, are mere employees. — Hartigan v. Board of Regents, 49 W. Va. 14, 22.
“We do not think that a professor in the university is a public officer in any sense that excludes the existence of a contract relation between himself and the board of regents that employed him in respect to such employment. It seems to us that he stands in the same relation to the board that a teacher in a public school occupies with respect to the. school district by which he is employed, and that is purely a contract relation.” — Butler v. Regents, 32 Wis. 124.
“It is clear that a professor is not an officer, but an employee under contract to fill a chair of learning. Hartigan v. Board of Regents, supra.
We think according to the terms of the statute that appellant had power to employ appellee for the term of one year.
This action is to recover damages for the wrongful discharge of appellee. It is not a proceeding to prevent the removal of appellee by appellant, nor to reinstate him after removal. It is not an attempt to control appellant in the exercise of any of its discretionary powers; it is simply an attempt to hold it *144 for a violation of a valid contract. To hold that appellant is liable in damages for a breach of its contract with appellee is not to hold that it cannot remove him. A private corporation can discharge an employee before the expiration of his term of employment because he has no franchise or property in his office. — Hartigan v. Board of Regents. But if it wrongfully discharges him, thus violating the contract between it and the employee, it will be liable to him for consequent damages.
Professor Meyers was an employee of appellant corporation, his relation thereto being contractual; he had the same remedy in the event of a violation of that relation by a wrongful discharge that .he would have had if his employer, appellant, had been an ordinary private corporation. While section 76, supra, gives to appellant the power to remove appellee, it does not absolve it from responsibility in damages if the discharge be wrongful. There is authority sustaining the conclusion we have reached.
In Board of Regents v. Mudge, 21 Kan. 223, 229 and 230, the court being composed of Chief Justice Horton, and Justices Brewer and Valentine, Mudge was elected a professor of the Kansas Agricultural College under a contract that he should receive three months’ notice of discharge, which was an employment for at least three months. He was discharged without notice and for three months thereafter was without employment, notwithstanding his efforts to secure it. He was paid for his services to the date of discharge but nothing for the succeeding three months. He sued the board for his salary during the three months succeeding dismissal, and recovered below. The judgment was reviewed on error and affirmed. The” statute of Kansas made the board of regents a body corporate with right as such to sue and be sued, and empowered it to govern the college, *145 elect the president, professors and teachers and to determine the amount of their salaries. The statute also gave it express power to remove the president and any officer or teacher when the interests of the school should require. It was contended as- a defense to the action that the contract between the board and Mudge was an employment for a definite time, that the board had no power to employ a professor for a. definite time, that is, could not deprive itself of the power to terminate at its pleasure a contract with a professor, that therefore the contract was void. The court held that the board had the power to employ Professor Mudge for a definite time, that it was a violation of the contract of employment to discharge him without cause before the expiration of the time of his employment and that for damages consequent it was responsible. Therein the court said:
“While their powers (those of the board of regents) are extensive, still they may render their board liable by the wrongful exercise of súch power. Thus they have the unquestioned and continuing-power of employing a president, professors .and teachers whenever they may choose, and of discharging any of them whenever they may choose; but if they agree to employ a president or professor or teacher for a period of three months, and then wrongfully discharge him before the three months have elapsed, they will leave their board responsible for the whole amount of the salary for such three months, notwithstanding such discharge. While the legislature unquestionably intended to confer upon the board of regents extensive powers, yet it did not «intend to confer upon them the irresponsible power of trifling- with other men’s rights with impunity; and making the regents responsible for their acts, does not in the least abridge their powers; It only tends to make them more cautious and circumspect in the *146 exercise of their powers. But the plaintiff in error claims in substance that the board has no legal power to make a contract to employ a president, or a professor or a teacher for any particular period of time— not even for a day or an hour — and therefore, that an agreement to employ a president or a professor or a teacher for three months, or for any other definite period of time, would be an absolute nullity. Now we cannot think this is correct. There is no express limitation upon the power of the board to make a contract to employ a president, or a professor or a teacher for any period of time, and we know of no implied limitation that would prevent the board from employing or agreeing to employ a president or a professor or a teacher for three months, or for even a longer period of time, provided it were not unreasonably long. "We would think that the board has the power to make a valid contract, in advance, to employ a president, or a professor or teacher for some short but definite time — say three months — and especially so, where the board reserves the right to discharge such president, professor or. teacher at any time-for misconduct. It would certainly be for the interest of the college that the board should have such power. No man of spirit, of self-respect, and of capability would want to hold an office or position at the whim or caprice of a body of men with whom he might have but little, if any, personal acquaintance. No man of spirit, of self-respect, and of capability would accept an office unless he felt that he was reasonably certain to hold the same for some reasonable period of time.”
In Board of Education v. Cook, 3 Kan. (court of appeals) 269, Miss Cook was employed by the board of education of Ottawa under a contract to teach in the public schools of that city for the ensuing year “unless sooner removed by vote of the board,” she *147 was discharged before the expiration of the school year and sued for damages sustained through the breach of the contract of employment by her wrongful discharge.
There the contract was with a public board and for services in a public institution. The contract with appellee has in these particulars the same characteristics. There the express contract of employment was for a definite time unless Miss Cook was sooner removed by action of the board. The implied contract of appellant with appellee was for a definite time and the statutes supplied to it the clause that appellee might be removed by the board. There is no reason of public policy for construing the contract with appellee as permitting appellant to terminate its contract with appellee at pleasure that did not apply to the contract between the board of education and Miss Cook, yet, the court there held that her discharge without good cause therefor was a violation of the contract of employment and that the board was liable in damages. The gist of the holding was that the contract for the employment of Miss Cook for a definite time as teacher in the public schools was valid and that she could not be wrongfully discharged before the expiration of the term of her employment without liability attaching to the board therefor.
If that contract was good, the one before us should be good.
School District No. 3 v. Hale, 15 Colo. 369, was an action against the school district to recover the balance due the plaintiff, Hale, under a contract employing him as a teacher for a definite period of time. The complaint set up the contract of hiring, plaintiff’s performance and his wrongful discharge. There the contract between the school district and the teacher was to teach for a definite time. It was *148 held that the contract was valid and that the district was liable thereon for the wrongful discharge of plaintiff.
It seems if that contract between the board of directors of the school district and the teacher for a definite time was valid, and the board was liable for the wrongful discharge, then the contract here, employing appellee to teach for a definite time, ought to be- valid. If the fact that the contract of employment'was for a definite time was not fatal to that •contract on grounds of public policy, then it ought not to be fatal to this. In the course of the opinion the court said:
“In the statute relating to schools the board of directors is given full power to do whatever may be necessary for the due and regular management of the schools of their district. This in terms includes the hiring and discharge of teachers. This power, however, must always be exercised in' obedience to the general principles of law governing contracts of this class, unless there be some specific restriction in the statute- which prevents their application. There is nothing whatever in the statute which gives the board the' right to make a contract for a specific term, at a specified price, which shall not be subject to the legal consequences of a breach. The power of employment and discharge is not in terms beyond the control of the general law. It was always true that where a contract of hiring was entered into between two parties for a fixed period, at a definite price, the. employer could not escape liability for a discharge without "cause. ’ ’
School District v. Ross, 4 Colo. App. 493, 496, was an action by a teacher against a school district for damages on a contract of employment as teacher for a definite time. Such damages arose through a breach of the contract by her wrongful discharge *149 before the end of her term of employment. Want of power in the board of directors of the school district to employ a teacher for a definite time would have defeated the action, yet, this objection, although there was a recovery, and although the respective parties were represented by able and experienced counsel, was not even mentioned by the court or by counsel.
The case is at least suggestive of an absence of merit in the contention here made, that the board of regents of appellant was without power to employ appellee for a definite time. Counsel say that the law in this particular is not the same in contracts between school districts and teachers as between the board of regents and professors. No reason has been advanced why it is not the same, and we know of none.
School District v. Stone, 14 Colo. App. 211, was an action upon a contract of employment as teacher for a definite time against a school district. There was a recovery. Want of power in the board of the district to make the contract for a definite time would have defeated the action, yet this objection was not made.
In Butler v. Regents of the University of Wisconsin, supra, an action on a contract of employment for a definite time between the professor and the board of regents was sustained. Although eminent counsel appeared for the respective parties it was not suggested that the fact of the contract being for a definite time was fatal thereto.
The statute in terms authorized the making of this contract. It was made, and it was violated before its expiration by the discharge of appellee. In the absence of any showing of sufficient cause for the discharge we must for the purpose of this ruling conclude . that the discharge was wrongful, and that therefore appellant violated its contract. Appellee was damaged thereby and entitled to recover there *150 for. We think the judgment of' the trial court permitting him to do so was right.
Richards v. Clarksburg, 30 West Virginia 491; Hartigan v. Board of Regents, 49 West Virginia 14; and Devol v. Board of Regents, 56 Pac. (Arizona) 737, are cited as contra the conclusion we have reached.
Richards v. Clarksburg was an original proceeding in the supreme court of West Virginia to prohibit the common council of the town of Clarksburg from removing from office the mayor of that town. The court denied the writ, holding that the common council possessed, upon good cause, such power of amotion. It does not follow that because the common council of a town can remove from public office its mayor for. misconduct therein, appellant can violate its contract with its mere employee, appellee, without responsibility for consequent damages.
We find nothing in the case pertinent to the question before us.
Hartigan v. Board of Regents was an original proceeding in the supreme court of West Virginia to secure a writ prohibiting the board of regents of the West Virginia university from carrying into execution a resolution passed by it removing Dr. Hartigan from a professorship therein. The writ was denied. The proceeding was to prohibit the board from carrying into effect its resolution of removal. It was not an action to recover damages for a violation by the board of any contract of employment for a definite time with Dr. Hartigan. The case does not hold that if Dr. Hartigan had a contract of employment for a definite time and the board • should remove him without cause he could not recover damages consequent upon his wrongful discharge. The writ of prohibition was denied upon three grounds: (1) The board of regents in removing Dr. Hartigan *151 was exercising discretionary powers granted a branch of the executive department of the state government. Acts of the executive department of the state government involving discretion cannot be reviewed by the judicial department. (2) If the action of the board were subject to review it would be by certiorari, not by prohibition. (3) Dr. Hartigan was not a public officer but a mere employee of a corporation, therefore subject to discharge at any time. The court in declining to prohibit the removal of Dr. Hartigan, and in saying that he was subject to discharge at any time, did not hold that the board would not be responsible in damages for a wrongful discharge in violation of some contract between it and an employee. It does not follow because the power to remove exists that the principal will not be liable in damages for a wrongful discharge of the employee. The contract between Dr. Hartigan and the board provided that he should receive sixty days’ notice of discharge. The board discharged him without this notice* but it observed its contract in paying him for the sixty days. It thus recognized that it could make a contract for a definite time, and that it was liable for a violation of such contract in discharging Dr. Hartigan without this notice, and while the opinion of the court does not turn on the question of the validity of the contract in discussing the case it regards the contract as a valid one.
This case contains nothing, in our judgment, contra the conclusion we have reached.
In Devol v. Board of Regents, Devol was employed by the board of regents of the University of Arizona as a professor under an agreement that he should receive three months’ notice of the termination of his employment. He was discharged without notice and without cause and sued to recover as damages his salary for the three months succeeding *152 Ms discharge. The decision against him below was affirmed on appeal. The territory of Arizona authorized the board to hire and discharge employees “when in the judgment of the board the interests of the university required it. ’ ’ The court said if the board had power to employ a professor for a definite time, and should .exercise it, then it would thereby deprive itself of the power given by the statute to- discharge him when in its judgment it was to the interest of the university to do so. It further said that if the board had the power to employ a professor for a definite time, however short, it would follow that it would have the power to employ for a long time and thus deprive succeeding boards of their legitimate powers. The lack of power to discharge does not follow from the exercise of the power to employ for a definite time. Notwithstanding a contract is made under the power of employing for a definite time, the board can discharge the employee at any time; but, if it does so wrongfully, it is liable, as it ought to be, for damages thus unjustly caused. The existence of the contract no more deprives the board of the power to discharge than a contract of employment deprives a private corporation of the power to discharge an employee. The effect of the contract made under the power is not to prevent a discharge but to create responsibility in damages for a wrongful discharge. Nor does it follow that because the board can employ for a short definite time that it can employ for any length of time it may see fit. When a contract arises which provides for the employment of a professor for an unreasonable length of time, or for one of such great length that it deprives succeeding boards of their powers, it will be time enough to consider such objections. • The term of émployment of the professor in the Arizona case was for only three months. It does not appear *153 in the opinion that such term was unreasonable in its length, or impaired the power of any succeeding board. The same can be said of the contract with appellee. It does not appear that the contract was unreasonable in the length of the term of employment, nor does it appear that it impaired the power of succeeding boards. The contract is one made by a branch of the executive department of the state government and is presumed valid until the contrary appears. The court in the Arizona case assigns as the only further reason for its conclusion, that if the contract were a valid one, it would obligate the territory to pay for services never rendered. Further, that if some one else was employed to succeed the discharged professor, and filled his place, the territory would have to pay twice for a single service. It is said that the public money could not be so used. If the contract were otherwise valid the fact of a double liability, one for damages thereon, and one to the party performing the services, would not be a sufficient reason for invalidating the contract! Such liability against public corporations frequently exists. No authority is cited by the court for its conclusion.
We are unable to agree with the conclusion of the Arizona court, or with any one of the reasons assigned therefor.
Judgment affirmed. Affirmed.