410 F.2d 1323
 George JONES, Jr., Appellant,
v.
Jesse Victor HOPPER, President of Southern Colorado State
College, and C. Gale Sellens, William H. Southard, Robert W.
Bartley, L. Richard Bratton, Phillip M. Lorton, Stuart W.
McLaughlin, and Mrs. William B. Naugle, Members of the Board
of Trustees of Southern Colorado State College, Appellees.
 No. 9248.
 United States Court of Appeals Tenth Circuit.
 May 19, 1969.
 
 Eugene Deikman, Denver, Colo. (Harry K. Nier, Jr., Denver, Colo., with him on brief) for appellant.
 Richard W. Laugesen, Jr., Special Asst. Atty. Gen., Denver, Colo. (Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., James W. Creamer, Jr., Asst. Atty. Gen., Denver, Colo., with him on brief) for appellees.
 Before MURRAH, Chief Judge, and LEWIS, BREITENSTEIN, HILL, SETH, HICKEY and HOLLOWAY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal is from a judgment dismissing with prejudice the complaint of appellant Jones, an associate professor of philosophy. The basis of the dismissal was that the complaint failed to state a claim upon which relief could be granted. Appellees, who are the President and members of the Board of Trustees of Southern Colorado State College, filed the motion to dismiss upon which the judgment is based.
 
 
 2
 The dismissal of the complaint, drawn as a civil rights pleading, presents the issue of whether a claim is stated under the Civil Rights Act.[1]
 
 
 3
 The complaint alleges jurisdictional facts,[2] identity of parties, their residence and citizenship, and the status of the college.
 
 
 4
 The complaint alleges the powers of the Board of Trustees are as follows:
 
 
 5
 'The Board of Trustees is vested by (124-17-1 and 124-5-1 Colo.Rev.Stats. (1963)) with the entire control and management of the affairs of the College, has general supervision of said College and the control and direction of the funds and appropriations made thereto, with power to appoint and remove all subordinate officers, professors, associate professors, teachers, assistants, employees or agents, in, about, or concerning said College, to appoint or employ, discharge and suspend, contract and fail to renew contracts of employees and other subordinates, and to fix the salaries of each and prescribe their several duties. They further have the power and authority to prescribe the various books and texts to be used in the Colleges, the courses of study and instruction and to make all needful rules, regulations and By Laws for the good government and management of the same. The actions of President Hopper, hereinafter described, were approved, authorized and ratified by said Board of Trustees, and each of them.'
 
 
 6
 It is further alleged the acts complained of are exercised under color of the statutes, regulations, customs and usages vesting the power above averred.
 
 
 7
 The complaint further alleges that Jones was given notice that his services would be terminated at the end of the academic year by a letter sent from the President and authorized by the Board which is attached to the complaint as Exhibit A.[3]
 
 
 8
 The complaint then continues with a partial description of the 'John Dean case' referred to in the above exhibit.
 
 
 9
 The curriculum vitae of appellant Jones is set forth in the complaint as well as the details of his association and status with Southern Colorado State College. In this description of his status with the college, Jones points out that the duration of each appointment under which he served was one year and that it was at the end of his second appointment that the appellees determined he would not be reappointed.
 
 
 10
 The allegations then conclude that the reason Jones was not reappointed was because he had exercised his constitutionally protected rights[4] in the following manner:
 
 
 11
 (a) He objected to the disqualification of an applicant for his department because the applicant was an Oriental.
 
 
 12
 (b) He attacked an English department textbook in a student newspaper.
 
 
 13
 (c) He founded an independent faculty-student publication which contained articles criticizing the war in Viet Nam, commenting on labor problems and pacifism, and an article objecting to monitored classrooms.
 
 
 14
 (d) He supported the student, John Dean, referred to above in Exhibit A, who had been committed to a hospital pursuant to a court order obtained by his parents as a result of the student's attempt to register with his draft board as a conscientious objector.
 
 
 15
 Jones averred he was a pacifist by religious conviction and that his views expressed orally and by writing on this subject were an exercise of his religious freedom.
 
 
 16
 He concluded that because of the above conduct and actions an expectancy of continued employment was terminated which was an injury to an interest which the law will protect against invasion by acts in violation of the Civil Rights Act.[5]
 
 
 17
 Jones alleges he was damaged as a result of the failure to renew his teaching contract, and relief is prayed for in the amount of $300,000.00.
 
 
 18
 The second claim of Jones' complaint by reference adopts the foregoing allegations describing them as a conspiracy to punish him for exercising his constitutional rights granted by the First and Fourteenth Amendments. He further concludes he was denied equal protection under the law.
 
 
 19
 The basic requirements of a complaint based upon 42 U.S.C. 1983 are: (1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiff to a deprivation of rights, privileges, or immunities secured by the Federal Constitution and laws.[6] The allegations necessary to state such a claim, as in the case of any other civil action in the federal courts, are not to be held insufficient unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[7]
 
 
 20
 When we examine the complaint herein in the light of the foregoing rules, we are directed to ask: What guaranteed right, privilege or immunity was denied Jones which is protected under the Constitution and laws?
 
 
 21
 The complaint alleges the refusal of the appellees to reappoint Jones after the term of his current appointment expired.
 
 
 22
 Jones contends the appellees, authorized by the Colorado statutes to administer the college, have denied him a right of expectancy to continued employment because he exercised freely his constitutional rights of speech, publication and religion. Jones cites only Bomar v. Keyes[8] as authority recognizing this expectancy interest.
 
 
 23
 Bomar, supra, related to a high school instructor who relied upon a probationary contract of employment which was terminated in October during the academic year. The court assumed that Bomar's discharge was not a breach of contract,[9] but identified her interest in the following language: 'Nevertheless, it may have been the termination of an expectancy of continued employment, and that is an injury to an interest which the law will protect against invasion by acts themselves unlawful, such as the denial of a federal privilege.'[10] The federal privilege involved was jury service.
 
 
 24
 Analyzing this language, we direct ourselves to the question: What is the source of the interest? In seeking the answer we must take the facts into account.
 
 
 25
 The contract which established the interest attributed to Bomar was a probationary contract of employment between Bomar and the Board of Education. Keyes was not privy to the contract; therefore, the court could assume that Bomar's discharge was not a breach of contract. Keyes, however, by complaining to the Board, had interfered with the interest stemming from the contract existing between Bomar and the Board of Education. This analysis is sustained by the Restatement of Torts 766 (1939)[11] which is cited as authority in Bomar.
 
 
 26
 The source of the interest in Bomar is the contract. The action sounds in tort against one not privileged to interfere with the contract.
 
 
 27
 The complaint in our case makes no allegation or inference that a contract existed. Jones' complaint expressly concedes that his 'termination was not a breach of contract,' thereby admitting that a contract did not exist. Accordingly, the interest which Jones seeks to assert cannot be derived from a contract.
 
 
 28
 We now look to the Federal Constitution and laws for the source of the interest secured.
 
 
 29
 The Supreme Court has consistently held, 'the interest of a government employee in retaining his job, can be summarily denied. It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer. * * * This principle was reaffirmed quite recently in Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012.'[12] The foregoing must be read in the light of the principle enunciated in Pickering v. Board of Education,[13] which quotes Keyishian v. Board of Regents.[14] The principle stated teaches that public employment may be denied altogether subject, however, to the restriction that unreasonable conditions may not be imposed upon the granting of public employment.[15] There is nothing in the complaint to warrant an inference or conclusion that the Colorado statute nor its application herein went 'beyond what might be justified in the exercise of the State's legitimate inquiry into the fitness and competency of its teachers.'[16]
 
 
 30
 As a matter of fact, there are no allegations relating to conditions of employment of professors or assistant professors at Southern Colorado State College. The complaint merely alleges the duties and authority of the administrators. Therefore, we can find no where in the complaint an allegation of any identified interest which is secured by the Federal Constitution or laws.
 
 
 31
 The complaint alleges a Colorado institution involved, governed by the laws of Colorado identified in the pleading. Appellant was a professor at this institution of learning. 'It is clear that a professor is not an officer, but an employe under contract to fill a chair of learning'.[17]
 
 
 32
 The complaint alleges Jones was appointed for an academic year and then reappointed and served the entire second appointment. He was notified he would not be reappointed for a third academic year. The alleged interest deprived was in the appointment for a third year. It is admitted he did not have a tenure privilege either by Colorado law or contract. 'Among the most fundamental rules of the law of master and servant is that which recognizes that, absent an applicable statutory or contractual provision to the contrary, an employer enjoys an absolute power of dismissing his employee, with or without cause.'[18]
 
 
 33
 Southern Colorado State College is a state academic institution organized and existing under Colorado law which vests the government and management of its affairs in a board of trustees which has among other vestitures 'power to appoint and remove all subordinate officers, professors, associate professors, teachers, assistants, employees or agents, in, or about, or concerning said college, to appoint or employ, discharge and suspend, contract and fail to renew contracts of employees and other subordinates. * * *' (recited in complaint as set forth, supra).
 
 
 34
 We think this provision precludes Jones from having the relief he seeks in this proceeding. His claimed interest must find its source in his expired appointment which constituted whatever contract existed. The provision above acknowledged became a part of any contract that may have existed between him and the college.
 
 
 35
 The provision specifically denies an expectancy to continued employment; therefore, absent an expectancy, there could be no interest.[19] 'One has no constitutional right to a 'remedy' against the lawful conduct of another.'[20]
 
 
 36
 As demonstrated above the right, privilege or immunity Jones alleges he was deprived of is non-existent.
 
 
 37
 We believe the appellees herein were exercising a discretion given them by the power vested under the Colorado statute set forth in the complaint. The exercise of this discretion cannot, under the facts alleged in the complaint, become unlawful conduct which would justify its falling within the ambit of the Civil Rights Act.
 
 
 38
 'Because of the special needs of the university, both public and private, great discretion must be given it in decisions about the renewal of contracts during the probationary period. In deciding whether to rehire or grant tenure, the considerations involved go well beyond a judgment about general teaching competence.'[21]
 
 
 39
 "Will the interests of an institution of learning be promoted by dispensing with the services of a particular professor?' And yet if we assume that the statute of the state is of any virtue, it is just such a question that the plaintiff in error sought to have determined in the Circuit Court. It is a question which, in our opinion, the Legislature intended to commit to the sound judgment of the regents who are selected because of an especial fitness for the performance of such duties, and who, by their experience and their intimate familiarity with the institution, are qualified to exercise that discretion in a far sounder manner than any court or jury could be qualified by evidence adduced through witnesses. It is elementary that no cause of action can arise from the lawful exercise of a statutory power in the absence of an express provision conferring it. It is also a principle of law as securely founded that an exercise of a power by an administrative board or officer to whose judgment and discretion it is committed is not a proper subject of review by the courts when fraud or conditions equivalent thereto do not exist.'[22] 'It would be intolerable for the courts to interject themselves and to require an educational institution to hire or to maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ. For the courts to impose such a requirement would be an interference with the operation of institutions of higher learning contrary to established principles of law and to the best traditions of education.'[23]
 
 
 40
 The second claim re-alleges the various acts complained of in the first claim and describes the charge in the nature of a conspiracy to deprive Jones of claimed rights under the Civil Rights Act and the Constitution of the United States. The complaint alleges 42 U.S.C. 1983, 1986 and 1988 in its jurisdictional allegations and 42 U.S.C. 1985(2) and (3) in its second claim. Combining them we examine what has been alleged in the complaint as a conspiracy on the part of appellees to deprive Jones of the rights claimed.
 
 
 41
 If one does not rely on the provisions of 42 U.S.C. 1985(3), relating to going in disguise, the existence of a conspiracy is an essential allegation in the complaint based upon the substantive law of the state.[24]
 
 
 42
 The complaint is based upon an act established by the Colorado statutes authorizing the exercise of discretion by the appellees. We concluded above there was not an unlawful or a wrongful exercise of the discretion claimed under the facts alleged.
 
 
 43
 Colorado has stated the rule, 'An action for conspiracy can not be successfully maintained unless the purpose to be effected is unlawful or a lawful purpose is accomplished by an unlawful means.'[25]
 
 
 44
 This court has recognized the similar Utah rule regarding whether or not the action complained of is justified.[26]
 
 
 45
 The trial court concluded that under the Colorado statutes the exercise of discretion was authorized and justified. We agree and affirm.
 
 
 46
 Affirmed.
 
 
 47
 SETH, Circuit Judge, with whom HOLLOWAY, Circuit Judge, joins (dissenting):
 
 
 48
 This case comes to us on the dismissal of plaintiff's complaint for failure to state a claim. The majority has held that the complaint is legally insufficient because the plaintiff has asserted no 'right' or 'interest' to be protected by the Constitution. I must disagree because in my opinion the allegations are sufficient under the decisions of the Supreme Court for the case to be brought to trial.
 
 
 49
 The complaint describes plaintiff's two contracts of employment each for a year and asserts an expectancy of continued employment thereafter. He further alleges that he received a notice of termination. This letter advised him in part:
 
 
 50
 'I regret to inform you that at the end of this academic year, your services with Southern Colorado State College will be terminated.' There was no reference to any contract, but his services were terminated at the expiration date of his contract then in force. The plaintiff alleges that his services were so terminated solely because of his exercise of First Amendment rights.
 
 
 51
 The majority bases its opinion on the proposition that there was no 'expectancy' of further employment, and thus the plaintiff had no 'interest' to be protected by the First Amendment to entitle him to relief. The majority finds no 'expectancy' by referring to the statutory powers of the trustees of the school to hire and fire (Colo.Rev.Stat.1963, 124-17-1 and 124-17-5), and states that:
 
 
 52
 'The provision specifically denies an expectancy to continued employment; therefore, absent an expectancy, there could be no interest,' (citing Cobb v. Howard University, 70 App.D.C. 339, 106 F.2d 860).
 
 
 53
 The majority then holds that there is no 'interest,' therefore no cause of action was alleged. The majority thus holds that under this Colorado statute, and apparently in the absence of a contractual provision or of tenure specifically provided by statute, the board has unlimited power to discharge teachers. It holds that 'beyond doubt' plaintiff could not prove otherwise. This is in error on two grounds; the first is that plaintiff could very well prove an 'expectancy' of continued employment to exist outside any specific contractual or statutory provision, if this be necessary, and secondly, the board's power to discharge cannot be unlimited as the holding of the majority assumes.
 
 
 54
 To consider first the power to discharge, it appears that college professors may be 'employees,' as the majority says, as contrasted to 'public officers'; but nevertheless they have many additional and unique perquisites, privileges, rights and concurrent burdens, obligations, and ethical standards which have been added, assumed, and accepted over a long period of time as part of their professorial positions. To categorize them as 'employees' is not helpful nor is it really descriptive because it is incomplete. The majority then quotes from authorities to say that the fundamental rule of the master-servant relationship is that '* * * an employer enjoys an absolute power of dismissing his employee, with or without cause.' As a practical matter, this again hardly fits the relationship between trustees or regents of a college or university and the professors or the lesser teachers at such an institution. See Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231. The position of teachers relative to various supervisory boards has been the subject of many recent court decisions, and it would serve no purpose to develop the point here. These cases include Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629; Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216; American Federation of State, County & Municipal Employees, A.F.L.-C.I.O. v. Woodward, 406 F.2d 137 (8th Cir.); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir.); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770 (8th Cir.); Johnson v. Branch, 364 F.2d 177 (4th Cir.). Under this prevailing case law, I cannot agree that the Board here concerned had an unlimited discretion to discharge plaintiff. To include within the Board's discretion by statute, practice, or employment status the right to discharge for the exercise of First Amendment rights is certainly to attach unreasonable conditions to plaintiff's employment.
 
 
 55
 The Board certainly has broad discretion over the teaching staff and administrators, and is charged with the duty of operating the school in an orderly, effective, and professional manner. They can discipline and discharge those whose actions and words unduly interfere with teaching programs or with the teaching by others on the staff, or otherwise seriously disrupt the operation of the school. (See the '* * * performance of his daily duties in the classroom,' in Pickering v. Board of Education, supra). But no matter how broad their discretion may be by statute or by custom it cannot be used to deprive teachers of their constitutional rights. This is what plaintiff has alleged, and this is sufficient. Whether he can prove it is indeed another matter, and a matter which has not yet been reached in this case.
 
 
 56
 The balancing referred to in Pickering v. Board of Education is done when the facts are in and not before. The Court there said:
 
 
 57
 'The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public service it performs through its employees.'
 
 
 58
 We cannot anticipate such a balancing of facts on this motion.
 
 
 59
 The exercise of constitutional rights cannot create for a teacher or be used as some sort of a protection or insulation against discharge for proper and adequate reasons, nor can it be under Pickering without limit any more than can the exercise of discretion by the Board. As to the position of the majority that plaintiff could not prove as a fact and beyond doubt an 'expectancy' of continued employment, it must be observed that consideration is given in the opinion only to possible contractual and statutory provisions. The expectancy, if one is required, could very well arise from other sources or be based on school rules, practice, or custom as observed above. The plaintiff has alleged as a fact that there was such an expectancy. This is probably a mixed fact and law assertion, but we must assume on this appeal that the fact elements are capable of proof unless there is some legal bar. The majority says that the statutory powers of the trustees are such a bar, and also says that nothing arises by contract or statute.
 
 
 60
 The power bar has been considered above, but it is intertwined with the tenure or expectancy matter, and is mentioned again. But what is this 'interest' or 'expectancy' requirement? It would appear that a tenure requirement as a basis for asserting a cause of action has been long abandoned. McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir.); Johnson v. Branch, 364 F.2d 177 (4th Cir.). Teachers of whatever status do not give up First Amendment rights by reason of their employment. Pickering expressly so holds. Non-tenure teachers cannot be held to have more limited constitutional rights than do others. They are on a temporary basis not for reasons related to the problems before us, but instead on the quality of their teaching. Tenure is not the status which gives rise to the right to be protected. Tenure as a requirement for standing or to assert a cause of action has disappeared. The 'expectancy' requirement of the majority does not seem greatly different from tenure. Some 'interest' in continued employment or 'expectancy' is an essential ingredient of both. This 'expectancy' is perhaps a tenuous sort of tenure, but it is nevertheless such a requirement, and in my opinion can no longer be made.
 
 
 61
 I would thus hold that the complaint is sufficient as measured by the standards in the recent decisions of the Supreme Court, and the case should come on for trial.
 
 
 
 [1]
 42 U.S.C. 1983, 1985, 1986 and 1988
 
 
 [2]
 Jurisdiction of the court is invoked under 28 U.S.C. 1331 and 1343, as well as under 42 U.S.C. 1983, 1986 and 1988 of the Civil Rights Act
 
 
 [3]
 Exhibit A: 'February 25, 1966 Dr. George Jones, Jr. 1401 Greenwood Pueblo, Colorado 81003 Dear Dr. Jones: I regret to inform you that at the end of this academic year, your services with Southern Colorado State College will be terminated
 'So that there will be no misunderstanding, I wish to point out that this decision was arrived at before the publicity surrounding the John Dean case. Prior to the John Dean case, the Chairman of the Division and the Dean of the College and I agreed upon this decision. The Chairman of the Executive Committee of the College from the Trustees of State Colleges in Colorado was likewise informed at that time.
 'I trust and hope that you will find future employment which will be satisfying to you. Yours truly, (s) J. V. Hopper, President.'
 
 
 [4]
 Under the First and Fourteenth Amendments to the United States Constitution
 
 
 [5]
 42 U.S.C. 1983, 1985, 1986 and 1988
 
 
 [6]
 Flemming v. Adams, 377 F.2d 975 (10th Cir.) cert. denied, 389 U.S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963)
 
 
 [7]
 Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Keenan v. Looney, 227 F.2d 878 (10th Cir. 1955)
 
 
 [8]
 162 F.2d 136 (2d Cir.) cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947), rehearing denied, 332 U.S. 845, 68 S.Ct. 266, 92 L.Ed. 416 (1948)
 
 
 [9]
 'By (the) word (privilege) we understand a freedom to assert a legal right or a legal power * * *. The (state) statute provides that 'the educational affairs of each city shall be under the general management and control of a board of education.' * * * we assume that her discharge by the Board was not a breach of contract at all.' Bomar v. Keyes, 162 F.2d at 139
 
 
 [10]
 Id
 
 
 [11]
 'Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.'
 
 
 [12]
 Cafeteria & Rest. Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy, 367 U.S. 886, 896-897, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)
 
 
 [13]
 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)
 
 
 [14]
 385 U.S. 589, 605, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)
 
 
 [15]
 Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)
 
 
 [16]
 Id. at 490, 81 S.Ct. at 253
 
 
 [17]
 State Board of Agriculture v. Meyers, 20 Colo.App. 139, 77 P. 372, 373 (1904). See also 75 A.L.R. 1352 (1955). 'The courts are almost unanimous in holding that the position of a teacher is that of an employee, resting on the contract of employment, and not that of public officer.'
 
 
 [18]
 51 A.L.R.2d 745, 2 (1960)
 
 
 [19]
 See Freeman v. Gould Special School Dist., 405 F.2d 1153, 1158 (8th Cir. 1969); Cobb v. Howard University, 70 App.D.C. 339, 106 F.2d 860, cert. denied, 308 U.S. 611, 60 S.Ct. 175, 84 L.Ed. 510 (1939)
 
 
 [20]
 Senn v. Tile Layers Protective Union, 301 U.S. 468, 483, 57 S.Ct. 857, 864, 81 L.Ed. 1229 (1937)
 
 
 [21]
 Developments in the Law-- Academic Freedom, 81 Harv.L.Rev. 1045, 1101 (1968)
 
 
 [22]
 Ward v. Board of Regents, 138 F. 372, 377 (8th Cir. 1905)
 
 
 [23]
 Greene v. Howard University, 271 F.Supp. 609, 615 (D.D.C.1967)
 
 
 [24]
 Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962)
 
 
 [25]
 Contract Main. Co. v. Local No. 105, Bldg. Serv. Emp. Internat'l Union, 160 Colo. 190, 415 P.2d 855, 856 (1966)
 
 
 [26]
 Bank of Utah v. Comm'l Sec. Bank, 369 F.2d 19, 28 (10th Cir. 1966), cert. denied, 386 U.S. 1018, 87 S.Ct. 1374, 18 L.Ed.2d 456 (1967)