Gilbert ENDICOTT, Plaintiff,

v.

L. L. VAN PETTEN, Superintendent of
Unified School District 260, et al.,
Defendants.

No. W-4432.

United States District Court,
D. Kansas.

Aug. 12, 1971.

Ward D. Martin, Crane, Martin, Claussen & Ashworth, Topeka, Kan., for plaintiff.

Robert C. Foulston, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., Griffith & Mize, Derby, Kan., for defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

THEIS, District Judge.

The captioned case is presently before the Court on defendants' motion to dismiss for the reason that plaintiff's complaint fails to state a claim for which relief can be granted. Pursuant to Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C., the Court will treat the motion as one for summary judgment and dispose of the same as provided in Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.

The plaintiff, Gilbert Endicott, at all times material to this action, held a valid certificate to teach in the public schools of the State of Kansas. Plaintiff was employed for a period of five years by the Unified School District No. 260, Sedgwick County, Kansas. On February 17, 1970, the defendants notified plaintiff that his contract of employment would not be renewed for the 1970–1971 school year. The defendant Van Petten is the Superintendent of Unified School District No. 260 and the other named defendants are members of the Board of Education of the School District.

Plaintiff asserts that his termination or non-retention (the words are used synonymously throughout this memorandum) as a teacher in Unified School District No. 260 was in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, and pleads jurisdiction under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The thrust of plaintiff's complaint is that his status as a teacher was terminated by the defendants acting arbitrarily, capriciously, and without just cause in failing to give plaintiff notice of the reasons therefor and a hearing at which he could oppose the Board's decision, and that such decision of termination was willful and malicious.

The defendants assert that they are immune from a suit such as this, that plaintiff had no constitutionally protected right to continued employment, that defendants are not "persons" within the meaning of 42 U.S.C. § 1983, and that no claim upon which relief can be granted has been stated against the individual defendants. The defendants have not answered, nor have they submitted any affidavits to counter the plaintiff's allegations of fact. In this posture, the Court must accept the plaintiff's allegations as true and decide the motion solely on the questions of law urged by the defendants. For the reasons stated below, the Court concludes that jurisdiction is present and the defendants' motion must be denied.

As stated above, plaintiff had been employed by the Unified School District No. 260 for approximately five years when he was notified that his teaching contract would not be renewed for the school year 1970–1971. It appears that the School District employs its teachers on a year-to-year basis by the use of short term contracts. Kan-

sas, as do many states, has a "continuing contract" law which provides as follows:

"Same; notice to terminate teachers' contracts required; exceptions. All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or before the fifteenth day of March or the teacher shall give written notice to the governing body of the school district on or before the fifteenth day of April that the teacher does not desire continuation of said contract * * *." (K.S.A. 72–5411.)

The Kansas Legislature has also seen fit to provide that teachers in the larger cities (population over 120,000 persons) gain "tenure" after a probationary period. The probationary period is three years, during which time the Board of Education may or may not renew the contract as the Board "shall see fit." Also, the Board may discharge a probationary teacher during a contract year, but only after written notice and only for certain specified reasons. K.S.A. 1969 Supp. 72–5403.

These statutes are not controlling in the case at bar and it is not necessary for this Court to interpret their applicability to plaintiff's situation; but they are helpful, as more fully set forth below, in determining the nature of the interest asserted by the plaintiff and whether it is protected by the Fourteenth Amendment to the Constitution of the United States.

The plaintiff also alleges, and it is not denied by the defendants, that during the 1969–1970 school year the principal of the school in which plaintiff taught highly evaluated the plaintiff's performance and teaching ability. The plaintiff states that the sole reason for the non-renewal of his contract was the defend-ant Van Petten's dissatisfaction with the manner in which plaintiff attempted to discipline Van Petten's son. It is urged by the plaintiff that he should have been given notice of the Board's anticipated action, a statement of the reasons therefor, and an opportunity to be heard. Finally, the plaintiff alleges that Unified School District No. 260 had, in effect, a "fair dismissal procedure policy" which required a hearing before non-renewal of a teacher's contract. The exact substance of this "fair dismissal procedure policy" has not been made available to the Court, but the fact of its existence is helpful in determining whether plaintiff has properly plead the existence of a constitutionally protected right which he may enforce in this Court.

■ There are two essential elements to a cause of action under the Civil Rights Act of 1871. 42 U.S.C. § 1983. These are: (1) that the conduct complained of was by a person acting under color of state statutes or local law, custom or usage, and (2) while so acting, deprived another of rights, privileges or immunities secured by the Constitution and laws of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Palacios v. Foltz, 441 F.2d 1196 (10th Cir.). The allegations necessary to state such a claim, as in the case of any other civil action in the federal courts, are not to be held insufficient unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Jones v. Hopper, 410 F.2d 1323, 1327 (10th Cir. 1969) (en banc), cert. denied 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970). The threshold issue in a suit under § 1983 is whether the defendants acted under color of state law for "it is axiomatic that the due process provisions of the Fourteenth Amendment proscribe state action only and do not reach acts of private persons unless they are acting 'under color of state law.'" Browns v. Mitchell, 409 F.2d 593, 594

(10th Cir. 1969). There can be no doubt but that the plaintiff's complaint sufficiently alleges that the defendants in the case at bar were acting under color of state law.

The central issue in determining the merit of the defendants' motion is whether the plaintiff has sufficiently alleged the deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States. In this regard, defendants rely heavily on the case of Jones v. Hopper, supra, as dispositive of plaintiff's suggestion that he was denied a constitutionally protected right. *Jones* involved a situation which was quite similar to the case at bar, in that Jones was a college professor who alleged that the board of trustees unconstitutionally denied him the right of reappointment due to his exercise of the constitutional rights of speech, publication and religion. The Court of Appeals for the Tenth Circuit, in an en banc per curiam opinion, affirmed the district court's dismissal of the Civil Rights Act complaint of the plaintiff Jones on the ground that he had failed to allege the deprivation of a constitutionally protected right. In essence, the Court of Appeals held that the plaintiff Jones had not shown an "expectancy" of further employment and hence there was no "interest" to be constitutionally protected. Jones v. Hopper, supra, 410 F.2d at p. 1330 (Seth, J. dissent).

In *Jones,* the Court made reference to the statutory powers of the board of trustees whereby the Colorado Legislature had provided that the board had the power to hire and fire all subordinate personnel, and concluded that this provision denied an expectancy of continued employment. Although *Jones,* at first blush, would seem to be dispositive of the issues in this case, a careful reading of this opinion in conjunction with recent opinions of the Supreme Court leads this Court to conclude that the case at bar is both legally and factually distinguishable.

In the *Jones* case the plaintiff made no allegation of the existence of a con-tract between the parties; nor did he allege the existence of a "continuing contract law," "tenure law," or "fair dismissal procedure policy," as promulgated by the defendants in the case at bar. The Court of Appeals found that the plaintiff Jones did not have any contractually derived interest and thereby distinguished his situation from the one involved in Bomar v. Keyes, 162 F.2d 136 (2nd Cir.), cert. denied 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947), rehearing denied 332 U.S. 845, 68 S.Ct. 266, 92 L.Ed. 416 (1948). The *Jones* decision, as interpreted by this Court, held only that the plaintiff had not plead a contractually derived expectancy. It did not hold that a contractually derived expectancy of continued employment is not a constitutionally protected interest.

Without delving into the mathematical exercise of determining majority and minority rules with respect to whether the plaintiff in the case at bar has the constitutionally protected right he seeks to assert, it is sufficient to note that there are cases which both recognize and fail to recognize the right of a teacher in a public school to be secure in his expectancy of continued employment.

As the Supreme Court stated in Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), " 'one may not have a constitutional right to go to Bagdad, but the Government may not prohibit one from going there unless by means consonant with due process of law.' " Citing Homer v. Richmond, 110 U.S.App.D.C. 226, 229, 292 F.2d 719, 722 (1961). It seems that this observation is quite apposite to the case at bar. While it is true that the plaintiff herein had no constitutional right to teach in Unified School District No. 260, once the defendants granted the teaching contract to the plaintiff, coupled with the Kansas "continuing contract" and "tenure" laws, and in conjunction with the "fair dismissal procedure policy," the defendants could not terminate plaintiff's status without granting him due process of law.

■ It would seem from a reading of the cases in this newly developing area of the law that there is a certain degree of confusion between determining, on the one hand, the existence of a constitutionally protected right and, on the other hand, the degree to which the established right should be protected, i. e., the quantum of procedural due process that is required in denying or terminating the right. The search should be, first, to determine the existence of the right, and if a constitutionally protected right is found to exist, the question then becomes to what degree is that right protected by the Constitution, for "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers,* supra, 367 U.S. at p. 895, 81 S.Ct. at p. 1748. If a right is found to exist, the test for determining what procedures due process may require for the state to deny that right is to balance the precise nature of the governmental function involved against the private interest affected by governmental action. Id. Many of the cases in this area of the law seem to require the balancing of interests to determine the *existence* of a right rather than first examining the facts to see if a right exists and then balancing the interests to determine what due process requires in the way of procedural fairness. This Court's interpretation of *Cafeteria Workers,* supra, compels the latter procedure.

■ It is relevant that the Kansas "continuing contract law" provides that a teacher's contract of employment continues from year to year unless "written notice of *intention* to terminate" is given the teacher by the school board. This is certainly different than the statute involved in *Jones* and indicates, to this Court at least, that the Kansas Legislature, as a matter of public policy, recognized a valuable interest by a public school teacher in the expectancy of continued employment. It would also appear that the Kansas law anticipates more than mere notice of termination by virtue of the word "intention" contained in the statute. The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest. This type of statute gives teachers a certain degree of security in their positions and guarantees freedom to teach by protecting them from removal on unfounded charges or for political reasons or for exercising constitutionally protected rights. Alabama State Teachers Association v. Lowndes County Board of Education, 289 F.Supp. 300, 303 (N.D.Ala.1968).

The United States Supreme Court has repeatedly held that the employment of a teacher in a public school cannot be terminated because of the exercise of a constitutional right. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Slochower v. Board of Education, 350 U.S. 551, 555–556, 76 S.Ct. 637, 100 L.Ed. 692 (1956). In the case at bar, however, there is no assertion that the plaintiff's employment was terminated because he exercised a constitutionally protected right. The question is whether he had a right to procedural due process prior to any effective termination.

It would seem a rather hollow gesture for the federal courts to hold that while a teacher cannot be terminated for the exercise of a constitutional right, he can be terminated for no reason whatsoever. This, in effect, is precisely what the defendants urge this Court to do.

*Pickering, Keyishian* and *Slochower,* supra, stand for the proposition that a teacher's employment cannot be terminated for the exercise of substantive constitutional rights under the First and Fifth Amendments to the Constitution of the United States, rather than the proposition that teachers have a constitutionally protectible interest in an expectancy of continued employment. In other words, they deal with an impermissible burden (termination) being placed upon the exercise of a substantive constitutional right, rather than whether

a teacher's continued employment is a right to which procedural safeguards attach under the Fourteenth Amendment.

As indicated above, it would do little good to hold that a state cannot terminate or refuse to renew (as in *Keyishian,* supra) a teacher's contract of employment for the exercise of his constitutional right to freely speak out, but allow a state to do the same thing for no reason whatsoever.

To paraphrase Judge Doyle, of the United States District Court for the Western District of Wisconsin, if the Constitution forbids termination for the exercise of a substantive constitutional right, it also requires procedural protection of that right. Roth v. Board of Regents of State Colleges, 310 F.Supp. 972, 975 (W.D.Wis.1970). Therefore, if the plaintiff in the case at bar had a substantive right of an expectancy of continued employment, he likewise must be afforded procedural protection.

■ This Court can only conclude that the plaintiff has sufficiently plead the existence of a constitutionally protected interest. The derivation of this interest can be traced from the plaintiff's contract with the defendants, which includes the "fair dismissal procedure policy" mentioned above, and the recognition by the State of Kansas, in its tenure and continuing contract laws, of an interest in continued employment sufficient to merit special legislation, coupled with successive five-year prior employment and commendation citations received by the plaintiff.

It would seem that plaintiff's constitutionally protected interest might also be said to derive from another source, Judge Doyle noted in *Roth,* supra, at p. 979, that:

> " 'Badge of infamy' is too strong a term, but it is realistic to conclude that nonretention by one university or college [or school board] creates concrete and practical difficulties for a professor [teacher] in his subsequent academic career." (Words in brackets added.)

It is simply a fact of life that a school teacher who is terminated for any reason or for "no reason whatsoever" is going to face many practical difficulties in finding other employment or pursuing his chosen calling. As Mr. Justice Bradley noted nearly a century ago, the right to follow a chosen occupation is an inalienable right and any denial thereof is not only an abridgement of one's privileges and immunities of citizenship, but a deprivation of liberty. Butcher's Union Co. v. Crescent City Co., 111 U.S. 746, 762–765, 4 S.Ct. 652, 28 L.Ed. 585 (1884) (Bradley, J. concurring). This being so, it can only follow that the denial of this interest can only be accomplished by the state in a manner consonant with due process of law under the Fourteenth Amendment to the Constitution of the United States.

This is clearly the trend in cases involving a wide spectrum of professional persons and public employees generally. See, e. g., Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (state may not exclude a person from practice of *any* occupation in manner that contravenes due process or equal protection clauses of Fourteenth Amendment); Don v. Okmulgee Memorial Hospital, 443 F.2d 234, (10th Cir.) (osteopathic physician cannot be denied admission to hospital staff without due process); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970) (arbitrary non-retention of teacher violative of due process); Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966) (physician cannot be dismissed from hospital staff without due process); Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), cert. denied 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967) (teacher cannot be arbitrarily denied renewal of teaching contract); Orr v. Trinter, 318 F. Supp. 1041 (S.D.Ohio 1970) (teacher may not be terminated without due process); Roth v. Board of Regents of State Colleges, supra (due process requires that non-retention of teacher have some basis in fact).

In Birnbaum v. Trussell, supra, 371 F.2d at p. 678, the United States Court of Appeals for the Second Circuit reviewed a number of similar cases and concluded that:

"The principle to be extracted from these cases is that, whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist."

It thus becomes readily apparent that we are not dealing only with the protection of the privilege of public employment, but rather, the protection of the valuable inalienable right of following one's chosen occupation coupled with a right or interest of an expectancy of continued employment; which rights cannot be denied without due process of law. The Court holds that the plaintiff here has sufficiently plead the existence and deprivation of a constitutionally protected right. See also Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970); Dunham v. Crosby, 435 F.2d 1177 (1st Cir. 1970); Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Gouge v. Joint School District No. I, 310 F.Supp. 984 (W.D. Wis.1970).

In Gouge, a companion case to Roth, and one involving a similar factual situation to the case at bar, Judge Doyle, in a well-reasoned opinion, held:

"A teacher in a public elementary or secondary school is protected by the due process clause of the Fourteenth Amendment against a nonrenewal decision which is wholly without basis in fact and also against a decision which is wholly unreasoned, as well as a decision which is impermissibly based (such as race, religion, or exercise of First Amendment freedom of expression)."

As stated at the outset, this Court has proceeded on the premise that the inquiry should be twofold; the first question being whether the plaintiff has plead the existence of a constitutionally protected interest, and the second, if the first is answered in the affirmative, being what quantum of due process is that right to be afforded? As stated in Cafeteria Workers, supra, 376 U.S. at pp. 894–895, 81 S.Ct. 1743 and as recently reiterated in Goldberg v. Kelly, 397 U.S. 254, 262–264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), once a substantive constitutionally protected right is found to exist,[1] the degree to which that right is entitled to procedural protection is determined by weighing the precise nature of the government function against the private interest that has been affected by the governmental action. As heretofore stated, it should be remembered that due process is flexible and does not require a rigid or inflexible set of rules.

Particularly applicable to the situation involved in the instant case is the language contained in Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959):

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."

Judge Doyle, in Roth, supra, and Judge Kinneary, in Orr v. Trinter, supra, found that due process in teacher

1. It is interesting that in Cafeteria Workers, supra, 376 U.S. at p. 900, 81 S.Ct. 1743 (dissent), four Justices recognized the right to be protected from arbitrary government action as a substantive constitutional right entitled to procedural protection and intimated that the majority also recognized it as such.

termination situations required (1) that the teacher be given written notice of the proposed termination including a statement of the reasons for the proposed termination or non-retention; (2) a notice of a hearing at which time the teacher may respond to the stated reasons; and (3) a hearing at which the teacher has the opportunity to submit any evidence he might have relative to the stated reasons for termination. Judge Doyle also noted that the initial burden of going forward rested with the teacher. If a teacher is able to reasonably show that there is no basis in fact for the termination, the burden then falls upon the administration to proceed with a showing that there exists a basis in fact for their action. All of this is not to say that a teacher may not waive any of these procedural requirements at any stage, so long as it is knowingly done.

Since this is seemingly a case of first impression in this district, the Court has dealt with the degree of due process more extensively than necessary. Plaintiff is seeking remedial relief for past acts and not preventive relief, and since the matter is before the Court solely on defendants' motion to dismiss, it is unnecessary to determine the exact nature of the procedures that defendants had to make available to the plaintiff. On the basis of defendants' admission of the allegations by its motion to dismiss, this Court can only wonder at the reluctance of the defendants, an arm of the state, to provide fundamental fairness to those persons with whom they deal in an area so vital as public education, for it is only fundamental fairness that is required by the Constitution. When balancing the nature of the governmental function against the private interest affected to determine the degree of procedural safeguards required, the requirements of notice and hearing may well work to the state's greater interest in that "job security" in the academic community will foster a willingness on the part of teachers to exercise individuality and innovative techniques in improving our educational system. It will

also inspire our educators to exercise their "academic freedoms" and prevent the academic community from stagnating as a result of being subject to termination for expressing unorthodox views, thoughts contra to existing provincialism, or for no reason whatsoever.

The defendants also urge, as a basis for their motion to dismiss, that they are immune from suit under 42 U.S.C. § 1983. The Tenth Circuit Court of Appeals has held that the doctrine of governmental immunity, except as to members of the judiciary, is not absolute but limited in scope. Franklin v. Meredith, 386 F.2d 958, 960 (10th Cir. 1967). The Seventh Circuit has more recently adopted this approach in suits such as the one at bar and delineated the scope of the immunity to cover only acts which were taken in good faith. To hold otherwise would "frustrate the very purpose of Section 1983." McLaughlin v. Tilendis, supra, 398 F.2d at p. 290. The against a state which are barred by the Tenth Circuit has also held that suits such as the one at bar are not suits Eleventh Amendment, and that individual defendants are "persons" within the meaning of Section 1983. Williams v. Eaton, 443 F.2d 422 (10th Cir.). Since the immunity issue depends upon the determination of whether the defendants acted in good faith, it must await factual determination at a later date, in the face of a specifically plead allegation that defendants' actions were willful and malicious, obviously excluding a good faith basis.

The defendants next argue that money damages will not lie against the individual defendants. This is a difficult question with which the Supreme Court has not definitively dealt. In Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 239, 90 S.Ct. 400, 24 L.Ed.2d 386, (1969), the Court seemed to state that damages would lie for a violation of one's constitutional rights. Mr. Justice Black recently acknowledged that Section 1983 authorizes the recovery of money damages against a state official, acting under color of state law, who deprives one

of a constitutional right. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 91 S.Ct. 1999.

■ The Tenth Circuit has likewise stated that Section 1983 will authorize the recovery of money damages from state officers, but "when the action in essence is for recovery of money from the State * * *" no damages will lie. Williams v. Eaton, supra. In *Williams* it was found that the plaintiff had failed to plead a claim for relief against the individual defendants, a situation inapposite to the case at bar, since the plaintiff recites in his complaint that his claim is made against the defendants individually, and that by virtue of their official positions they acted under color of state law to deprive him of constitutionally protected rights. Damages, if provable, is as viable a remedy as any other, and on the basis of the allegation of willfulness and malice, both compensatory and punitive could result here.

In light of the foregoing, the defendants' motion to dismiss must be denied, and the matter must proceed to trial or other disposition after discovery is completed.