Joseph O'MELIA, Appellant
(Plaintiff below),

v.

SWEETWATER COUNTY SCHOOL DIS-
TRICT NO. 1 et al., Appellees
(Defendants below).

Joseph E. ROUSH, Appellant
(Plaintiff below),

v.

SWEETWATER COUNTY SCHOOL DIS-
TRICT NO. 1 et al., Appellees
(Defendants below).

Nos. 4046, 4047.

Supreme Court of Wyoming.

May 25, 1972.

Rehearings Denied June 28, 1972.

Graves & Smyth and Charles E. Graves, Cheyenne, for appellants.

Joseph H. Galicich, of Galicich & Hamm, Rock Springs, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On March 5, 1971, Joseph E. Roush, a continuing contract teacher, and Joseph O'Melia, an initial contract teacher,[1] at

1. Sections 21.1–151 to 21.1–164 (Wyoming Teacher Employment Law).

Wamsutter, Wyoming, filed separate actions, each seeking a declaratory judgment in the district court which would provide an opportunity to continue their employment as teachers subsequent to the time they had been advised by the authorities that teachers of the district must reside in Wamsutter five days a week, that this policy was a condition of the teaching contract, and that the district was aware of the two teachers commuting to Rawlins (forty miles distant) each day and not living in Wamsutter.[2] Defendants denied and counterclaimed for an alleged overpayment in salaries. The cases were consolidated for trial and by stipulation the findings and decision of the district court were to be considered as those of the school board so that a hearing before the board as to Roush would be unnecessary. The court found generally for the defendants and against plaintiffs, who have now presented their consolidated appeals.[3]

The skeletal circumstances occasioning the controversy were that, although the teachers initially lived in Wamsutter, after their marriages they refused to stay in that community during the five weekdays, despite the school authorities' insistence that they were obligated to do so under the provisions of a rule which read: "New teachers being hired by the district will be expected to reside in the community at least five days a week and to take part in school activities on weekends." Both teachers and their wives maintained residences in Rawlins and admittedly plaintiffs by their pleadings spent weekends there as well as other times when their teaching duties did not require their presence in Wamsutter, the evidence showing that commencing in the fall of 1970 they resided in Rawlins and commuted to their work.

The contention of the defendants was that the rule applied to all the teachers em-ployed after January 18, 1966, while the plaintiffs indicated that had not been their understanding when they commenced their employment and that in any event such a requirement was unreasonable and a violation of their constitutional rights. The board had provided teacherages at a minimal rental, for which the plaintiffs paid, and which they occupied initially full time but after their marriages to women who resided in Rawlins only on occasions when they stayed overnight at Wamsutter.

The trial court's findings of fact stated, inter alia: that the question for determination was the interpretation of the school policy which read, "New teachers being hired by the district will be expected to reside in the community at least five days a week and take part in school activities on weekends"; that when such policy had been adopted the district had not had adequate housing for its teachers but the same was in the process of construction; that the district had two of its teachers commuting from Rawlins and the policy was not intended to apply to those two but was intended to apply to teachers newly employed after the adoption of the policy, which was by reference made a part of each plaintiff's contract; that the policy was a valid and reasonable contractual condition of employment; that there was no evidence of coercion on the part of the school board to compel plaintiffs to enter their contracts; that the plaintiffs had not been unlawfully or improperly denied any constitutional rights or privileges; and that the school policy was not capricious or arbitrary.

The conclusions of law provided, inter alia, the fact that plaintiffs paid rent for housing at Wamsutter did not make them residents of the community within the meaning of the school policy and their

---

2. On March 8, 1972, the Board of Trustees decided to terminate both teachers because of their failure to comply with the residence policy. However, when the board's attorney pointed out that as to Roush it was necessary to merely "make a recommendation" of termination this was effected although as the board's chairman explained, "The intent was the same."

3. Defendants' counterclaims were dismissed.

physical presence there was what was intended by the policy; the term "New teachers being hired by the district" meant teachers employed after the adoption of the policy; the policy was a valid and reasonable contractual condition of employment, did not violate any constitutional right or privilege of either plaintiff, and was not arbitrarily or capriciously applied nor was it applied in a way which violated equal protection of the laws; neither plaintiff had any expectancy to any continued employment and absent any interest to protect had no constitutional right to a remedy against the lawful conduct of the school board; and each plaintiff had a legal and constitutional right to enter into a contract of employment and to abide by the school policy, waiving his constitutional rights or privileges, which he might have had with respect thereto, by signing the contract and being estopped to question the constitutionality of the policy.

Plaintiffs in their appeal contend that they were denied continued employment as a result of their exercising constitutionally protected rights of living where they chose, which did not seriously interfere with or disrupt teaching activities, that their terminations were not in compliance with law, being based on policy that was arbitrarily and nonuniformly applied within the teaching administrative staff of the school; and that their terminations were based on an arbitrary interpretation of the school policy.

■ Careful analysis of the cases cited in an effort to substantiate the contention that the mentioned rule was a violation of constitutional rights discloses no set of facts which are similar, rather any precedent analogies are forced, most of the cases dealing with constitutional rights other than those in issue and none relating to circumstances where as here the parties voluntarily contracted to abide by a rule with a resultant waiver. We find no merit in this aspect of the argument.

■ We are, nevertheless, impressed with the propriety of the contention that the plaintiffs had an expectancy of continued employment with the school district, contrary to the finding of the court in this respect—at least as far as Roush is concerned. Some lip service was presented on the part of O'Melia, the initial contract teacher, but we are aware of no statutory provision and certainly none by contract, which even hints at expectation of reemployment for a person in this status, and no authorities are presented. As to Roush, the continuing contract teacher, his right to expect reemployment except for cause under the provisions of § 21.1–154 was made clear in Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont, Wyo., 486 P.2d 235, 236–237. In retrospect we there perhaps overstated in our effort to give a correct interpretation of the section and in so doing denominating the right given therein as being tenure; but in any event we left no doubt that absent good cause to the contrary a continuing contract teacher has a reasonable expectation of continued employment. As observed in Endicott v. Van Petten, D.C.Kan., 330 F.Supp. 878, 882:

"  *  *  *  The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest. This type of statute gives teachers a certain degree of security in their positions and guarantees freedom to teach by protecting them from removal on unfounded charges  *  *  *."

■ We have left for consideration then the effect of the board's rule as to the continuing contract teacher under the circumstances disclosed in this case. The rule itself is less than a model of clarity with its reference to "New teachers." Moreover, its ambiguity was compounded by failure to enforce the rule, the superintendent and administrative officer of the board in charge of the school at the time Roush married testifying both as to nonen-

forcement and as to his lack of sympathy with the rule.[4] While it is to be expected that one contending for a certain interpretation of a rule may for his own benefit explain that he understood it to mean what he later desires that it be, Roush in this instance was to some extent justified in saying he never felt he had been in violation of policy since when he began commuting he was not a new teacher. Although a mistake of only one of the parties to a contract in the expression of his agreement or as to the subject matter generally affords no ground for relief, an exception to the rule can occur where the mistake is caused by the action of the party complained against. Svalina v. Big Horn National Life Insurance Company, Wyo., 466 P.2d 1018, 1019; 17 C.J.S. Contracts § 143. In the instant situation under all the existing circumstances it would appear that an injustice would be inflicted on Roush by holding him to what the board asserted as his bargain and that indeed it would be unreasonable to so hold him.

Because the trial court's judgment against Roush, the continuing contract teacher was predicated upon the binding effect of what it assumed to be a clear school policy and upon the tenet that the continuing contract teacher had no expectancy of continued employment, both of which views are misconceived, the judgment must be reversed as to Roush and remanded for further action consistent with the views herein expressed.

As to O'Melia (Case No. 4046), affirmed.

As to Roush (Case No. 4047), reversed and remanded.

---

4. Testimony was not adduced as to the intent of the board at the time the rule was adopted; however, one member of the board testified that it was her intent that teachers hired after the time of the adoption of the policy be available in her community and participate more fully in the school situation. There had also been fear expressed at an advisory board meeting in February 1971 that if there were empty teacherages district taxpayers might question the need for the lodgings, which once lost would probably not be returned.