LOUISE BONAR & another[1] vs. CITY OF BOSTON
& another.[2]

Suffolk.   December 3, 1975. — January 23, 1976.

Present: QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*School and School Committee. Boston. Practice, Civil, Stipulation.*

Notices of termination of employment sent to two teachers by the
secretary of the Boston School Committee prior to the April 15
deadline established by G. L. c. 71, § 41, were ineffective where
the school committee had not voted until after April 15 to termi-
nate their employment, unless it could be shown that the superin-
tendent of schools had decided prior to April 15 to eliminate the
teachers from consideration as possible appointees for the following
year, as he was empowered to do under St. 1965, c. 208, § 1 [580-
584]; where the parties' statement of agreed facts omitted reference
to the superintendent's action or inaction with respect to nomi-
nating the plaintiffs for the following year, and where this fact
would be decisive of the controversy, this court remanded the case
for a determination of the necessary facts [584-585].

BILL IN EQUITY filed in the Superior Court on June 16,
1971.

The suit was heard by *Abrams*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Joseph G. Sandulli* for the plaintiffs.

*Gerard A. Powers*, Assistant Corporation Counsel, for
the city of Boston & another.

---

[1] Salvatore Giglio.

[2] School Committee of Boston.

KAPLAN, J.  From a judgment entered by a judge of the Superior Court upon a statement (and supplemental statement) of agreed facts, the plaintiffs, formerly teachers in the Boston public school system, appeal, and the defendants city of Boston and School Committee of Boston cross-appeal.  We shall conclude that the statement on which the judge acted omitted reference to circumstances which are crucial to the controversy.  Accordingly, we shall remand the case for further proceedings which should dispose of the matter.

The agreed facts were as follows.  In 1969-1970 the plaintiff Louise Bonar was serving her first year, and the plaintiff Salvatore Giglio his third successive year, in the Boston school system.  On or before April 15, 1970, the plaintiffs severally received notices in writing informing them that they would not be employed for the year 1970-1971.  The notices were signed by Edward J. Winter, secretary of the School Committee of Boston.  After those notices were sent, the school committee, on April 23, 1970, voted to inform the plaintiffs that they were not to be employed for that year.  The plaintiffs did not serve as teachers after the school year 1969-1970, and not until December, 1970, did they learn of the date of the school committee's vote.[3]

In their action commenced in June, 1971, the plaintiffs claimed that they had been appointed, by operation of law, for the year 1970-1971 but were denied work and salary and were entitled to redress accordingly.  The law pointed to was G. L. c. 71, § 41, as appearing in St. 1953, c. 372, which then read in part as follows:  "A teacher or superintendent not serving at discretion shall be notified in writing on or before April fifteenth whenever such

---

[3] For its better assurance, the school committee later, on March 6, 1971, voted, "without waiving any rights or admitting that they are employees," to notify the plaintiffs that they would not be hired for the following year (1971-1972), and the plaintiffs were so notified by April 15, 1971.  In the view we take, this notice is immaterial.

person is not to be employed for the following school year. Unless said notice is given as herein provided, a teacher or superintendent not serving at discretion shall be deemed to be appointed for the following school year." Neither Bonar nor Giglio was "serving at discretion," i.e., with "permanent" as contrasted with probationary tenure; "at discretion" status would be attained, as another provision of § 41 declared,[4] upon election for a fourth year after service for three previous consecutive years. The plaintiffs' contention was that the notices were ineffective because not preceded by a vote of the school committee authorizing them.

Agreeing in substance with the plaintiffs, the judge awarded Bonar the salary she would have earned for the school year 1970-1971, and directed that Giglio be reinstated as a teacher serving at discretion (having been reemployed by operation of the statute for a fourth year) with salary for the year 1970-1971.[5] Bonar appealed to secure actual reinstatement for at least one year, with back pay not only for 1970-1971 but to the time of her eventual reinstatement. Giglio appealed to obtain the balance of back pay to eventual reinstatement. The defendants cross appealed asserting that the plaintiffs were not entitled to any relief.

If attention is confined to § 41, the judge's view, as expressed in the rulings of law and the judgment, would appear correct (barring, however, the question of back pay to Giglio[6]). The judge relied on standard authority stating that hiring and firing of teachers were the sole

---

[4] Section 41, as amended by St. 1956, c. 132, § 1, stated (preceding the two sentences quoted in the text): "Every school committee, in electing a teacher or superintendent, who has served in its public schools for the three previous consecutive school years, . . . shall employ him to serve at its discretion; . . . ."

[5] The agreed facts say nothing about any mitigation of damages.

[6] We deal with this in the text below.

responsibility of the school committee, which it could not lawfully delegate.  See *Demers* v. *School Comm. of Worcester,* 329 Mass. 370, 373 (1952).  Thus, had the defendants attempted to cast on the committee's secretary the task of determining whether Bonar and Giglio should be sent notices under § 41, and had the secretary done as he in fact did, both teachers would be deemed appointed for 1970-1971.  Here, so far as appeared from the agreed facts, the secretary acted without even attempted prior authorization from the school committee, and the same result should follow.  The formal vote of the school committee after April 15 could not change the result.  The vote could not operate in itself as a proper notice because it came too late; and as a purported "ratification" it should fail because that which could not be lawfully delegated before the event should not be capable of ratification afterwards.  Although this court had not had occasion to spell out these propositions, cases in other jurisdictions dealing with statutes like § 41 have done so at some length.[7]

What may materially change the picture just described is the fact that appointment of public school teachers in Boston has for some time been governed, in part, by special legislation.  Statute 1965, c. 208, § 1 (replacing St. 1906, c. 231, § 1), after providing that "[t]he superintendent of schools [of Boston] shall be the executive officer of the school committee [of Boston] in all matters pertaining to the powers and duties of the school committee," states that "[n]o person shall be elected or appointed by the school committee unless such person shall

---

[7]See, e.g., *Board of Educ. of Marshall County* v. *Baugh,* 240 Ala. 391, 395 (1941), on later appeal, *Baugh* v. *Board of Educ. of Marshall County,* 244 Ala. 522 (1943); *Board of Pub. Educ. in Wilmington* v. *Delaney,* 52 Del. 213, 219-220 (1959); *Bessler* v. *Board of Educ. of Chartered School Dist. No. 150 of Peoria County,* 11 Ill. App. 3d 210, 212-213 (1973); *Day* v. *School Dist. No. 21 of Granite County,* 98 Mont. 207, 214-216 (1934); *State ex rel. Rutherford* v. *Barberton Bd. of Educ.,* 148 Ohio St. 242, 245-246 (1947); Annot., 92 A.L.R. 2d 751 (1963), especially at § 5.

have been nominated for such election or appointment by the superintendent of schools . . . ." We think the elections and appointments spoken of embrace appointments and reappointments of probationary teachers. Cf. *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 (1973). General Laws c. 71, § 41, is to be read in conjunction with the 1965 statute.[8] By declining to nominate the plaintiffs, the superintendent was empowered to eliminate them from consideration by the school committee as possible appointees for 1970-1971. If he had in fact indicated to the school committee that he was so eliminating them, then the secretary's letter to the plaintiffs was in keeping with § 41 and effective, in our opinion, to extinguish any just claim on their part to employment for the following school year. The superintendent's indicated judgment that he would not nominate these plaintiffs would be the equivalent of a vote by a school committee in another locality of the Commonwealth to refuse reappointment of probationary teachers;[9] in either case notification (whether by the secretary of the school committee or the superintendent himself) of the teachers by April 15, giving them appropriate warning under § 41, would conclude the matter.[10] There would be no need for a vote

---

[8] There have been subsequent amendments of the statute as it stood in 1965, but these are not material. See St. 1966, c. 642, § 9; St. 1972, c. 150.

[9] Irrelevant to the present case, but important for the future as to school committees outside Boston, is an amendment of G. L. c. 71, § 38, by St. 1974, c. 342, approved June 11, 1974, to read in part: "No election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract or promotion by the superintendent of schools."

[10] *State ex rel. Farley* v. *Board of Educ. of Euclid City School Dist.,* 169 Ohio St. 388 (1959), is apparently confirming of this analysis. The Ohio statute at that time gave the superintendent a power regarding appointments rather similar to that of the Boston superintendent, and his notice to the teacher prior to the statutory date, April 30, of a refusal to rehire was given effect without a vote by or notice from the board.

of the school committee in addition to the act of the superintendent, and in this view the vote of April 23 in the present case would be superfluous. The case would be quite different, however, if the superintendent had nominated these plaintiffs and it was not until April 23 that the school committee in effect rejected the superintendent's nomination.

What the superintendent did or did not do with respect to the nomination of these plaintiffs is thus the crucial question of fact on this appeal. Unfortunately it is not covered in the statement of agreed facts.

There is no doubt of our power to remand the case for the purpose of settling the fact essential to a sound determination of the controversy, nor can there be doubt about the propriety of exercising the power in the present case. Analogous is *Fall River Trust Co.* v. *B.G. Browdy, Inc.,* 346 Mass. 614 (1964), where the parties stipulated and agreed that the facts in an auditor's report were the sole facts to be considered by the judge. When the case was reviewed by this court, it appeared, in light of the governing law, that additional facts were needed and would be decisive. The stipulation was ordered "discharged as not conducive to justice," *id.* at 617, and the case was remanded.[11] See *Symmes Arlington Hosp., Inc.* v. *Arlington,* 292 Mass. 162, 165 (1935); *Malone* v. *Bianchi,* 318 Mass. 179, 182-183 (1945).

It remains to outline the result if the defendants' position fails when the additional fact is ascertained. As indicated, the plaintiff Bonar would be entitled to the salary for 1970-1971, but no more (here we would agree with the decree below). This is not a case where an employee has been deprived of a constitutional right and due vindication may call for actual reinstatement even though the employment was on a temporary or proba-

---

[11] In the present case the trial judge noted a request by the parties that no inferences should be drawn from the agreed facts. This is in no way inconsistent with the conclusion we reach.

tionary basis. See *Burton* v. *Cascade School Dist. Union High School No. 5*, 512 F.2d 850 (9th Cir. 1975) (especially Lumbard, C.J., dissenting at 854). Section 41 creates a right to timely notice so that the employee may promptly seek other employment (see *DeCanio* v. *School Comm. of Boston*, 358 Mass. 116, 120 [1970], appeal dismissed and cert. denied sub nom. *Fenton* v. *School Comm. of Boston*, 401 U.S. 929 [1971]); it is not itself directed to continuance of actual employment but imposes a real or hypothesized year's employment as a sanction to enforce the notice. See *Drown* v. *Portsmouth School Dist.*, 435 F.2d 1182, 1187 n.12 (1st Cir. 1970). In Giglio's case, however, the hypothesized employment results in "at discretion" tenure under the basic arrangement with probationers, and therefore actual reinstatement is called for, which entails back pay to that time (as to the extent of the back pay we differ from the decree below). The defendants should be allowed to prove mitigation of the money damages for the years after 1970-1971, but as to 1970-1971 the defendants have had, and missed, their chance to prove any mitigating circumstances (see n.5).

The judgment is vacated and the case is remanded to the Superior Court for a determination of fact, as indicated in this opinion, and entry of judgment accordingly.

*So ordered.*