**Arnola BORMAN, Appellant (Plaintiff),**

v.

**SWEETWATER COUNTY SCHOOL DISTRICT NO. 2, Louise Ryckman, Albert Wilde, Sue Scott, Allen West, William Thoman, John Bernard, and David Ortega, in their official capacities, Appellees (Defendants).**

No. 5367.

Supreme Court of Wyoming.

May 12, 1981.

Bernard Q. Phelan, of Patrick E. Hacker & Associates, Cheyenne, for appellant.

Ford T. Bussart, of Greenhalgh, Bussart, West & Rosetti, P.C., Rock Springs, for appellees.

Before ROSE, C. J., and McCLINTOCK *, RAPER, THOMAS and ROONEY, JJ.

* Retired March 26, 1981, but continued to participate in the decision of the court in this case pursuant to order of the court entered March 30, 1981.

ROONEY, Justice.

Appellant-plaintiff instituted this action to recover damages for breach of contract in that she was not given notice of termination of her initial contract teaching status pursuant to § 21–7–105, W.S.1977. The trial court found generally for appellees-defendants and made findings of fact and conclusions of law with reference thereto.

The required notice is set forth in § 21–7–105:

"An initial contract teacher who has taught in the system continuously for a period of at least ninety (90) days shall be hired on an annual basis and shall be notified in writing of termination, if such is the case, no later than March 15 of each year."

The word "termination" as used therein is defined in § 21–7–102(a)(viii), W.S.1977:

" 'Termination'.—The failure of the board of trustees of a school district in Wyoming to reemploy a teacher at the end of a school year in any given year."

Appellant words the issues on appeal as follows:

"1. Was Plaintiff an initial contract teacher who was entitled to notice of termination * * * pursuant to W.S. § 21–7–105 (Rep.Ed.1977)?

"2. May a school district unilaterally create a classification of teacher outside the purview of the *Wyoming Teacher Employment Law*?

"3. Is the 'notice of termination' provision of W.S. § 21–7–105 (Rep.Ed.1977) a right conferred upon initial contract teachers which serves a public purpose or public interest, and therefore, unwaivable?

"4. If the notice provision of W.S. § 21–7–105 (Rep.Ed.1977) is waivable, did

the Plaintiff knowingly, intentionally, voluntarily and unequivocally waive her rights under W.S. § 21–7–105 (Rep.Ed. 1977)?

"5. Did the Plaintiff receive adequate notice of termination pursuant to W.S. § 21–7–105 (Rep.Ed.1977)?"

■ There is no dispute over the fact that appellant was an initial contract teacher.[1] She had taught in appellee school district during part of the 1976–77 school year and was employed to teach during the 1977–78 school year. This action was predicated upon termination of her employment at the end of this second year. Issue number 1 is answered in the affirmative.

■ We also answer issue number 5 in the affirmative inasmuch as we agree with the trial court that appellant received adequate notice of termination pursuant to § 21–7–105.

Thus, we affirm, and need not address issues numbered 2, 3 and 4 concerning special classifications and waiver since answers to them, either way, would not change the result in this matter.

Appellant was employed by appellee to replace a teacher given one year maternity leave during the school year 1977–78. The contract given appellant recited that it was for "one year only." Before appellant signed the contract, she was given a detailed explanation of her status as a substitute replacing a teacher on maternity leave, and that the contract was for one year only. She was specifically told that she would not have any expectation of continued employment, but would be required to reapply and be interviewed for a position if one was desired in a subsequent year.

1. The definitions of a continuing contract teacher and an initial contract teacher are set forth in § 21–7–102(a)(ii) and (iv), W.S.1977, as follows:

"(ii) 'Continuing Contract Teacher'.—(A) Any initial contract teacher who has been employed by the same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year; or

"(B) A teacher who has achieved continuing contract status in one (1) district, and who without lapse of time has taught two (2) consecutive school years and has had his contract renewed for a third consecutive school year by the employing school district;

\* \* \* \* \* \*

"(iv) 'Initial Contract Teacher'.—Any teacher who has not achieved continuing contract status."

During the school year (on January 17, 1978), appellant was given a written evaluation which was signed by her. It reflected that she was performing under "a one-year replacement contract."

In April, 1978, appellant indicated by means of a letter to the assistant superintendent of her understanding that she was on notice of her termination at the end of the school year. She there said that she would like to teach under a "regular contract" in the next year. Her understanding of such is further evidenced by the fact that she taught during the school year 1976–77 as a substitute teacher under a contract similar to the 1977–78 one. She was not then given additional notice of termination, but she recognized the fact of termination and reapplied for a position the next year. With notice, an initial contract teacher does not have an expectation of reemployment. *O'Melia v. Sweetwater County School District No. 1*, Wyo., 497 P.2d 540 (1972); *Bertot v. School District No. 1, Albany County, Wyoming*, 522 F.2d 1171 (10th Cir. 1975).

The statutory time for notification of termination is "no later than March 15 of each year." The time is not designated as "in March," or "between January 1 and March 15," or as any specific time prior to March 15. If a one-year provision were placed in every initial teacher contract, substitute or otherwise, in an effort to circumvent the intent of § 21–7–105, supra, we would agree that its purpose was thwarted and hold the notice to be inadequate. Such universal and general notice could be no more than recognition that the contracts were initial teacher contracts and subject to a subsequent statutory notice of termination. But that is not here the situation. The evidence is substantial that both parties intended the contract to end in one year without further notice.

In construing contracts, our primary interest is to give effect to the intention of the parties. *Marathon Oil Company v. Kleppe*, 556 F.2d 982 (10th Cir. 1977); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980).

The purpose of the statutory notice prior to March 15 of the school year is to give the teacher time to seek employment elsewhere in the next school year. *Bonar v. City of Boston*, 369 Mass. 579, 341 N.E.2d 684 (1976). In this instance, appellant was well advised of the one-year notice of the employment, and the notice was not a universal notice placed in the contracts of all initial contract teachers. Rather, appellant received specific notice of the year-end termination, and she was able to prepare for employment elsewhere in the next school year. The purpose of § 21–7–105, supra, was properly fulfilled.

The problem here presented to us could have been avoided by giving appellant an additional notice during the first two weeks of March, but with the specific notifications given in this case, there was compliance with the statutory notice requirement.

Affirmed.

McCLINTOCK, Justice, dissenting.

Because I cannot agree with the majority's conclusion that plaintiff received notice of termination as required by § 21–7–105, W.S.1977, I must dissent.

The facts are undisputed. In November of 1976, it became necessary for defendants to create an additional fourth grade class because of an increased number of students due to "impact." Plaintiff was interviewed and hired to teach this newly created fourth grade class. At the time plaintiff accepted the teaching position, the assistant superintendent explained to plaintiff that the contract was for "one year only" and that the position would not be available the next academic year. However, plaintiff was also assured that because of the growth of the school district, there were always openings and that plaintiff would be "highly considered" for future employment. The contract signed by plaintiff was a regular contract that also contained the following statement: "This contract is for the Remainder of the 1976–77 School Year Only."

While plaintiff was not given notice of termination prior to March 15, 1977, she was eventually interviewed and hired to

teach first grade for the academic year of 1977–1978. Once again, plaintiff was told that this position was a one-year position because the position that she would be filling was created by a maternity leave. The words "one year only" appear in the bottom left-hand corner of the 1977–1978 employment contract.

During the academic year of 1977–1978, plaintiff received two low evaluations from her principal. Plaintiff indicated that these low evaluations were the result of a personality conflict and did not accurately reflect her teaching ability. After receiving the first low evaluation, plaintiff requested and had a conference with the assistant superintendent regarding plaintiff's low evaluations. Subsequently, the assistant superintendent, the superintendent and plaintiff's principal discussed the low evaluations. During this conference, the superintendent stated that because plaintiff had a "one year replacement contract" there was no need to further discuss the situation.

Plaintiff did not receive a written notice of termination prior to March 15, 1978. She did write to the assistant superintendent on April 11, 1978, requesting that she be considered for employment for the following academic year. After she made this formal request, she was interviewed by two principals. On April 26, 1978, the assistant superintendent told plaintiff's husband that plaintiff would not be receiving a contract for the following year.

School districts and school boards are created by the legislature and, therefore, their powers are limited to those powers conferred upon them by statute. *Perry v. Independent School District No. 696*, 297 Minn. 197, 210 N.W.2d 283, 286 (1973). Section 21–3–111, W.S.1977, authorizes the board of trustees in each school district, among other things, to:

"(a) * * *

"(vi) Employ and determine the salaries and duties of:

"(C) Teachers who shall provide the expertise in their areas of instruction;

"(D) Other certified professional employees; and

"(E) Other personnel;

"(vii) *Discharge any employee subject to the provisions of any applicable law governing the procedure for terminating the employment of school district employees;*" (Emphasis added.)

The legislature has set forth specific guidelines for teacher employment and termination in the Wyoming Teacher Employment Law. Section 21–7–102, W.S.1977, provides the following definitions for terms used in the article:

"(a) * * *

"(ii) 'Continuing Contract Teacher'.—(A) Any initial contract teacher who has been employed by the same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year; or

"(B) A teacher who has achieved continuing contract status in one (1) district, and who without lapse of time has taught two (2) consecutive school years and has had his contract renewed for a third consecutive school year by the employing school district;

"(iv) 'Initial Contract Teacher'.—Any teacher who has not achieved continuing contract status;

"(vii) 'Teacher'.—Any person employed under contract by the board of trustees of a school district as a certified professional employee;

"(viii) 'Termination'.—The failure of the board of trustees of a school district in Wyoming to reemploy a teacher at the end of a school year in any given year."

The legislature has limited the power of school boards in regard to hiring and firing teachers. A school board has no statutory authority to offer yearly contracts designating the employee as a "one year only"

teacher. As the majority has recognized, if the employee comes within the statutory definition of teacher, that employee is classified as either an "initial contract teacher" or a "continuing contract teacher."

Here, plaintiff became an initial contract teacher when she entered into the first employment contract with the school board. Once plaintiff had taught 90 consecutive days, as she unquestionably did both academic years, § 21–7–105, W.S.1977, mandates that plaintiff be given written notice of termination before March 15 if she was not to be reemployed during the next academic year.

Defendants contend that even if this court finds that plaintiff was an initial contract teacher, she waived her right to written notice of termination by agreeing to a "one year only" employment contract. As a general rule a person may waive a statutory or constitutional right enacted for the benefit of that person, if that right does not affect public policy or public interest. *Taylor v. State*, Wyo., 612 P.2d 851, 859 (1980); *Bruton v. Ames Community School District*, Iowa, 291 N.W.2d 351, 356 (1980). The question then is, why did the legislature enact the teacher employment legislation? In *O'Melia v. Sweetwater County School District No. 1*, Wyo., 497 P.2d 540, 542 (1972), and again in *Powell v. Board of Trustees of Crook County School District No. 1, Crook County*, Wyo., 550 P.2d 1112, 1116 (1976), this court, quoting from *Endicott v. Van Petten*, 330 F.Supp. 878, 882 (D.C.Kan.1971), indicated that the purpose of the teacher tenure and continuing contract law is to give teachers job security and " 'guarantees freedom to teach by protecting them from removal on unfounded charges.' " While I agree that freedom to teach is an individual right, I also believe that this right benefits the public. The policy behind the teacher education law has been only partially described in *Endicott*, supra, 330 F.Supp. at 882.

In *Faust v. Ladysmith-Hawkins School Systems, Joint District No. 1, Board of Education of Ladysmith*, 88 Wis.2d 525, 277 N.W.2d 303, 306 (1979), the teacher's employment contract specifically stated that both parties understood that the contract

could not be renewed. The court made the following statement when discussing whether a teacher could voluntarily waive the rights afforded by the statute dealing with renewal of teacher contracts:

> "It is apparent that there are strong public policy reasons for concluding that the procedural rights afforded by sec. 118.22, Stats., cannot be waived by individual teachers. The provisions of that statute advance the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers. In addition, it establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system. These procedures inure to the benefit of not only the teacher and the school district but to the public at large.
>
> "We conclude that it would be contrary to public policy to permit a waiver of the provisions of sec. 118.22, Stats. * * * "

The Wyoming Teacher Employment Law was enacted by the legislature not only to protect the individual rights of teachers, but more importantly to protect the educational interest of the state, including the students. Because this law serves a public purpose, it would be contrary to public policy to allow an individual to waive her rights under this statute. Therefore, plaintiff did not have a right to waive these statutorily created rights.

Even if I were to find that such rights could be voluntarily waived, I find no such waiver in the case at bar. Plaintiff was given no choice between a regular contract and a "one year only" contract, nor is there any indication that she was told that she waived all of her rights under the Wyoming Teacher Employment Law. These acts alone indicate that she did not voluntarily waive her rights under the law.

A case in point is *State ex rel. Rose v. Board of Education of Ohio Rural School Dist.*, 74 Ohio App. 63, 57 N.E.2d 609, 615 (1944), where the court observed:

> "All the facts and surrounding circumstances in the instant cases indicate there was never any intention on the part of

the teachers to relinquish the rights conferred upon them by statute. The acceptance of employment from year to year is not inconsistent with claiming the benefits of the tenure act. There has been no abandonment on the part of the teachers of the beneficial statutory provisions provided for them and in no way can the respondent board maintain that it has been misled or prejudiced by the teachers teaching under the only contract of employment the board was willing to grant. The board of education created the condition it now complains of as constituting a waiver on the part of the teacher. * * *

"To hold under the circumstances that these teachers voluntarily waived their statutory rights by accepting employment from year to year would be tantamount to holding that by going ahead and performing their duties as teachers in the schools that they intended thereby to surrender their respective rights under the statute and be forever deprived of its benefits. No such intention can be inferred from the act and conduct of the respective relators in continuing to teach. Much more commendable is such conduct on their part than standing by and refusing to begin the school year until the desired contract was forthcoming." Cited with approval in *Perry*, supra, 210 N.W.2d at 289.

The final question is whether the majority correctly concluded that plaintiff received notice of termination. The majority and defendants contend that plaintiff received two documents before March 15, 1978, that gave plaintiff notice of her termination. The first document was plaintiff's employment contract signed on August 8, 1977, that contained the words "one year only," and the second document was a performance evaluation given to plaintiff on January 17, 1978, in which plaintiff's principal had written not applicable on the sections stating: "I recommend continued employment" and "I recommend this teacher not be continued as a teacher in this school system." At the bottom of this sec-

tion the principal also wrote, "Mrs. Borman is on a one year replacement contract."

In support of this argument, defendants rely in part upon a South Dakota case, *Blood v. Spring Creek Number 12, Common School District,* 78 S.D. 580, 105 N.W.2d 545, 547 (1960), in which the court quotes the following passage from 78 C.J.S. Schools and School Districts § 197, p. 1066:

" * * * 'Where the statute requiring service of a notice not to reemploy fails to prescribe the contents of the notice, any language which may be understood to mean that the teacher is not to be reemployed for the succeeding year is sufficient. Statutes sometimes prescribe the form and contents of the notice. The notice must be in writing where the statute so directs. The notice need not be in the exact language of the statute, but substantial compliance with the statute is sufficient. The notice is sufficient if it fairly informs the teacher that he will not be employed for the succeeding year.' * * * "

I have no disagreement with this general rule; however, I do not believe that the two documents relied upon by defendants and the majority were sufficient to inform plaintiff that she would not be reemployed for the following academic year. The addition of the phrase "one year only" is not sufficient to notify plaintiff that she would not be rehired for the following year. This phrase merely reiterates the language of § 21–7–105, supra, that specifically provides that an initial contract teacher "shall be hired on an annual basis." While I agree with defendants that § 21–7–105, supra, does not specify the format for notice of termination, such notice must be sufficient to inform the initial contract teacher that she will not be reemployed the following year. The statements contained in the teacher evaluation did not fairly apprise plaintiff that she would not be reemployed by the school district the following year. I agree with plaintiff that "[t]his argument is a strained and stretched effort to show compliance with the statute with regard to notice, and borders upon being specious."[1]

1. During the trial the assistant superintendent indicated that he did not want to send plaintiff

a letter of termination because he felt that such action "would end it for her teaching career in

I find that defendants failed to give the written notice required by 21–7–105, supra, and that there was no waiver of that failure. The question is then, what would be the remedy afforded plaintiff. This question has not been discussed by either of the parties as fully as I would have liked, but plaintiff argues that failure to comply with § 21–7–105, supra, either resulted in automatic renewal of the old contract or entitled her to a new contract upon essentially the same terms. No authorities are cited for this proposition and my own research has revealed no cases that are directly in point. The question is then whether plaintiff's position has been supported by cogent argument. Her position, as expressed in her brief filed with the district court said this:

> "Since the statute directs School Boards to do one of two things, i. e. give Notice of Termination, or offer a new contract, prior to March 15th of each year, the only reasonable legal conclusion that can be reached, given the failure of providing Notice of Termination, is that the School Board offered a contract to the Plaintiff by operation of law. If such were not the case, the requirement to provide notice to an initial contract teacher of termination prior to March 15th would have no force or effect and School Boards could ignore the requirement with abandon, and the orderly procedure established by the Wyoming Legislature would dissolve into confusion."

The reason for lack of direct authority seems to be that while there are many states whose statutes require prior written notice of termination, frequently before March 15, as to both initial and continuing contract teachers, these other statutes often go on to provide specifically the conse-

quences of failure to give notice. It is fairly common to provide that such failure means that the teacher is "deemed to be appointed for the following school year." Mass.Ann.Laws, Ch. 71 § 41.

Alaska Stat. § 14.20.140 requires notice of termination to both tenured and nontenured teachers, and § 14.20.145 provides that if the notice is not given, the teacher "is entitled to be re-employed" upon terms agreed upon or if no agreement is reached, "the provisions of the previous contract are continued for the following school year." The Supreme Court of Alaska has held that if the notice is not given, there is no automatic renewal of the old contract but the teacher is given an "enforceable right to a written contract of employment for the next school year containing provisions like those in the teacher's contract for the preceding year. * * *" *Redman v. Department of Education*, Alaska, 519 P.2d 760, 765 (1974). However, without requiring the teacher to go through mandamus or other proceedings to secure the execution of such written contract, the court in *Redman* permitted recovery of damages for failure to give proper notice. As I read the opinion, the court treated the action as though a new contract had been effected by operation of law and then enforced that putative contract through allowance of damages measured by the projected salary.

Ark.Stat.Ann. § 80–1304(b) directs that every contract "shall be renewed in writing" on essentially the same terms as the preceding contract unless written notice of termination is given by a designated date. Notwithstanding the fact that no new contract had been executed or renewal endorsed on the existing contract, the Supreme Court of Arkansas held that dam-

---

Sweetwater District No. 2." It was his understanding that "[o]nce you're terminated from the School District, the teacher, generally, does not ever apply again, or what ever. * * *"

I find this reasoning illogical. In the case at bar it would have been very simple for the school district to notify plaintiff by March 15, 1978, that the position she was currently filling would not be open the following academic year because the regular first grade teacher would

be returning from maternity leave. Therefore, plaintiff would not be reemployed by the school district for the following year. However, the school district could, had it wished, also indicate in this letter that it strongly encouraged plaintiff to apply for openings in the district for the following year. I do not see how this type of notice of termination would end plaintiff's teaching career in the district; however, it would comply with the requirements of § 21–7–105, supra.

ages were collectable where the written notice was not given. *Newton v. Calhoun County School District*, 232 Ark. 943, 341 S.W.2d 30 (1960). See also *Wabbaseka School District No. 7 of Jefferson County v. Johnson*, 225 Ark. 982, 286 S.W.2d 841 (1956).

Interestingly, the Arizona statute at one time provided that the existing contract of teacher employees would be deemed automatically renewed unless written notice of termination was given before March 15 (*Carlson v. School District No. 6 of Maricopa County*, 12 Ariz.App. 179, 468 P.2d 944, 947 (1970)), but in 1974 the law was amended to require the school board to "offer a teaching contract for the next ensuing year to each probationary teacher and a contract renewal for each continuing teacher" unless prior to April 15 the board gives notice to the probationary teacher of the board's intention not to renew, or, as to a continuing teacher, unless the teacher has been dismissed under other terms of the statute. Ariz.Rev.Stat. § 15–252. I have been unable to find any Arizona decision or other authority explaining the reason for, or significance of, this change, but I interpret *Board of Trustees of Nogales Elementary School District No. 01 v. Cartier*, 114 Ariz. 96, 559 P.2d 216 (1977), as declaring it to have the same effect as before, that is, failure to give notice of dismissal or termination prior to April 15 results in automatic renewal of the teacher's contract. A probationary teacher does not have the same protection as to contract renewal as does a continuing teacher, but, as said by the supreme court in *School District No. 8, Pinal County v. Superior Court of Pinal County*, 102 Ariz. 478, 433 P.2d 28, 30 (1967), quoting from *Johnson v. Board of Education*, 101 Ariz. 268, 419 P.2d 52, 56 (1966): " 'In their [probationary teachers'] case, if their contract is not to be renewed, *only the proper notice* is required, and the Board need not show "good cause", * * *.' " (Emphasis added.)

New Hampshire is the only state I have found whose statute, like Wyoming's, fails to provide a specific remedy. N.H.Rev. Stat.Ann. § 189:14–a directs that any teacher who has a professional standards certifi-

cate and who has taught for one or more years "shall be notified in writing on or before March 15 if he is not to be renominated or reelected." A teacher who has taught for three or more years may ask for a statement of reasons and a hearing. In *Nazzaro v. Merrimack School District*, 118 N.H. 287, 385 A.2d 230 (1978), the question was whether the teacher had taught long enough to be in this latter category. Plaintiff had requested a statement of reasons and hearing, and upon refusal by the board brought suit for declaratory judgment and reinstatement. This district court denied recovery but the supreme court found that the teacher had taught for three years and was entitled to the protection of the statute. The final words were, "[e]xceptions sustained." I cannot tell whether this meant that the district court was to enter a declaratory judgment that she was entitled to reinstatement or only that the board had to furnish a statement of reasons and then hold a hearing after which it might be permissible to affirm the previous nomination. However, it is obvious that the court intended to furnish some relief to the teacher.

This court has held that whenever one party,

" * * * claims a right or seeks to impose an obligation under the terms of a statute, * * * it becomes necessary for us to read the statute, determine its intent and purpose, and give effect to that intention. * * * " *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154, 1157 (1979).

"It is this court's obligation to make sense out of a statute and give full force and effect to the legislative product. * * * We must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation." *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1285 (1980).

In *Spencer v. Laconia School District*, 107 N.H. 125, 218 A.2d 437, 441 (1966), the court said: "The 1957 legislation [§ 189:14–a, et seq.] was designed in part to afford greater

security to the teacher." As shown by *Nazzaro,* supra, the New Hampshire court will afford some remedy to the teacher who has not received the statutory treatment, even though the statute has failed to provide any remedy. In *Endicott v. Van Petten,* supra, 330 F.Supp. at 882, it is said:

" * * * The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest. This type of statute gives teachers a certain degree of security in their positions and guarantees freedom to teach by protecting them from removal on unfounded charges or for political reasons or for exercising constitutionally protected rights. * * * "

In *Bonar v. City of Boston,* 369 Mass. 579, 341 N.E.2d 684, 688 (1976), it was said that "[s]ection 41 [of Ch. 71 of Mass.Ann.Laws] creates a right to timely notice so that the employee may promptly seek other employment * * *."

In *O'Melia v. Sweetwater County School District No. 1,* supra, 497 P.2d at 542, this court referred to its previous decision in *Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont,* Wyo., 486 P.2d 235, 236–237 (1971), as leaving "no doubt that absent good cause to the contrary a continuing contract teacher has a reasonable expectation of continued employment." Both of these two Wyoming cases were concerned with the claims of a continuing contract teacher, but the fact remains that initial contract provisions are part of the same general law relating to the rights of teachers under contracts with school districts. Although the initial contract teachers may not have the same quantum of rights as do the continuing contract teachers, to the extent that such rights are given they are just as important to the teacher making his or her first foray into the field of education as they are to the seasoned veteran.

The decisions from these other states having tenure or teaching contract laws, as well as the brief statements of our own court, lead me to conclude that statutes concerning written notification of termination, whether of a continuing or an initial contract teacher, have the very real purpose of preventing the teacher from suddenly being cut off from employment with little prospect for a new position. Since the beginning teacher has indicated his or her interest in the educational field by securing the necessary qualifications and obtaining the first contract, it is reasonable to expect that he or she will want to try again for employment as a teacher, and from our study of the problem it appears that the spring of the year, from March 15 to the first of June, is the usual period for the termination and renegotiation of teaching contracts.

Where the statute mandates the offer of a new contract unless the prescribed notice is given, I have seen that failure to give the notice operates as a matter of law to effect a new contract. Our statute, as well as New Hampshire's, mandates only that a timely notice of termination be given. As the majority have indicated, this is for the purpose of giving the teacher time to find new employment. Unless this court were to conclude that our statutory mandate to give notice is a mere gesture without force or effect, it must conclude in a case before us that the teacher had some protectible interest in the right to receive timely and proper notice of termination. Plaintiff's argument that the school board's failure to give notice operated as the offer of a new contract has appeal as presenting one way in which we might enforce the salutary purpose of the statute.

Although it was not pertinent to the decision reached and may be considered as dicta, this appears to have been the view taken by the United States Court of Appeals in the First Circuit in construing the New Hampshire law. In *Drown v. Portsmouth School District,* 435 F.2d 1182 (1st Cir. 1970) (overruled on other grounds, *Raper v. Lucey,* 488 F.2d 748, 751 (1st Cir. 1973)), the court was concerned with an action brought under 42 U.S.C. § 1983, by a non-tenured teacher. The court recognized that under the New Hampshire law, "failure to rehire a non-tenured teacher affords the teacher no rights other than to notification by March 15 of the school year. N.H.Rev.Stat.

Ann. ch. 189, § 14–a." 435 F.2d at 1183. The teacher had been given timely notice of termination but claimed lack of procedural due process under the Fourteenth Amendment for failure to provide a hearing. Under § 14–a, such hearing may only be requested by a teacher who has taught in the school district for three or more years. The court further recognized that nontenured teachers were made aware that they had no right of reemployment by their contracts which run only for a year, but footnote 12 to the text, 435 F.2d at 1187, said this:

> "Although the requirement that non-tenured teachers be notified by March 15 if they are not to be reemployed may be interpreted as giving the teacher a right to a continuing contract unless notified, the primary right is to notice, not to continued employment. Without a fixed date by which notice must be given, New Hampshire Teachers might not have time to search for another job if they were not rehired. *To compel school districts to notify teachers in time, the districts are required to offer a contract if they fail to give timely notice.* Thus, while non-tenured teachers have a right to notice, they have no right to be rehired except to enforce the notice requirements." (Emphasis added.)

However, I believe that to adopt the argument of the plaintiff in its entirety and to read the statute as automatically renewing the old contract would be to read something into that statute that the legislature did not intend. The very fact that there were in existence all these other statutes when the legislature in 1967 adopted the Wyoming Teacher Employment Law and similar remedial provisions were not incorporated into our law is a strong indication that the legislature did not intend to go that far. I am convinced, however, the requirement in § 21–7–105, supra, that the initial contract teacher "shall be notified in writing of termination, if such is the case, no later than March 15 of each year," was a material covenant of the teacher's contract. It is said in 17 Am.Jur.2d Contracts § 257, pp. 654–656, that as a general rule contracting parties are presumed to have had in

mind all existing laws relating to contracts, and

> " * * * [t]hus, it is commonly said that all existing applicable or relevant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention. * * * " (Footnotes omitted.)

This general rule finds specific and pertinent application in *Haverland v. Tempe Elementary School District # 3*, 122 Ariz. 487, 595 P.2d 1032, 1034 (1979), where the Arizona Court of Appeals said:

> " * * * Our case law establishes that the terms of a teacher's contract are not necessarily confined to the provisions of the written document 'but rather include any pertinent statutory provisions in effect at the time the agreement was entered into.' *Carlson v. School District No. 6 of Maricopa County*, 12 Ariz.App. 179, 182, 468 P.2d 944, 947 (1970); see *Ryan v. Thomas*, 47 Ariz. 91, 53 P.2d 863 (1936). * * * "

*O'Melia*, supra, 497 P.2d at 542, was concerned with the claimed rights of an initial contract teacher and a continuing contract teacher, both of whom had been given timely notice of termination but who contested the right to terminate. We affirmed the right of expectancy of continued employment by the continuing contract teacher but denied it as to the initial contract teacher, saying that "we are aware of no statutory provision and certainly none by contract, which even hints at expectation of reemployment for a person in this status, and no authorities are presented. * * * " Here, we are not concerned with the right to continued employment but with the right to receive the statutorily required notice that there would be no new employment. Construing plaintiff's agreement with the school district as containing the provisions of § 21–7–105, supra, the school district contracted with plaintiff not only that she would be permitted to teach during the school year 1977–78 and receive the stipu-

lated compensation therefor, but that prior to March 15, 1978, it would give her written notice if her relationship with the school district was to be terminated at the end of the year. As I have previously stated, this was an important provision of the contract, and since the school district did not give such notice, it was guilty of breach of the covenant.

The question is then as to the damages which are recoverable for that breach. It must be emphasized that in this search I am not concerned with a breach of covenant to offer a new contract but only with a breach of the covenant to give timely notice that no new contract would be tendered. Were I to hold that the breach related to the offer of a new contract, it would be easy to accept the salary for the previous year, plus any increments and fringe benefits allowed by law, as the measure of damages, considering only other income that was received by the plaintiff as mitigation thereof. As to the failure to give notice, the question is much more difficult and we do not have before us a record upon which we could direct the entry of any judgment.

In *Reynolds v. Tice*, Wyo., 595 P.2d 1318, 1323 (1979), we said:

> "The measure of damages for breach of *contract* is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed. [Citations.]" (Emphasis added.)

This is indeed a very general statement, but one that I cannot improve upon at this time. If the word "covenant" was substituted for the word "contract," I think that the problem before the court would be to determine the amount that will compensate the teacher for the failure of the district to give notice of termination. The majority have already stated their understanding of the purpose of the mandate of notice; it was to permit the terminated teacher to look for a new position. Had that notice been given, and not because of any constitutionally improper purpose, Mrs. Borman would have received nothing in the way of

compensation, but she would have had—I postulate only for purposes of this case—better opportunity to obtain new employment. I do not say that such was the case, but I believe that plaintiff should be given the opportunity to show facts bearing upon that question and if she has suffered financial damage by reason of the lack of notice, judgment should be entered in her favor in that amount which the court finds to have been sustained. I would have reversed the judgment and remanded the cause for determination of damages growing out of the breach of covenant to give notice of termination.